UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



------------------------------------------------------------X

MYRON MIXON and
JACK'S OLD SOUTH, LLC,

Civil Action No.

*Plaintiffs,*

COMPLAINT

-against-

PRIDE AND JOY MIAMI, LLC d/b/a PRIDE
& JOY, LLC, PRIDE AND JOY BBQ. LLC
d/b/a PRIDE & JOY, LLC and PABLO
CARDENAS,

*Defendants.*

------------------------------------------------------------X

Plaintiffs, Myron Mixon and Jack's Old South, LLC, by their attorneys, Merle, Brown &

Nakamura, P.C., as and for their complaint against defendants Pride and Joy Miami, LLC d/b/a

Pride & Joy, LLC Pride and Joy BBQ. LLC d/b/a Pride & Joy, LLC and Pablo Cardenas, allege

on their own knowledge or otherwise upon information and belief as follows:

## NATURE OF THE CASE

1.      This is an action for anticipatory breach/repudiation of contract, trademark

infringement in violation of the Lanham Act, and common law misappropriation of name and

likeness.  In a nutshell, the defendants solicited the plaintiff, Myron Mixon, a world renowned

barbeque chef, for the purpose of exploiting his valuable name, likeness, trademarks, goodwill,

proprietary recipes, skill and expertise, so that they could launch and profit from two restaurants

(in Miami and New York) under the name "Pride and Joy".

2.      After entering into an agreement (later amended) to use Mr. Mixon's valuable

intellectual property, defendants aggressively marketed, promoted and exploited Mr. Mixon's

valuable name, likeness, trademark and goodwill in order to commence restaurant operations and

create an association in the eyes of the public between Myron Mixon and the previously valueless Pride and Joy name.

3.      However, and as it turns out, defendants had no intention of performing under their agreement with Mr. Mixon, as they have not only failed to pay Mr. Mixon his contractually agreed to license fee, but upon Mr. Mixon's demand for such payment, defendants repudiated their agreement with him without justification, and only after benefitting tremendously from his intellectual property.  Despite repudiating the agreement, defendants continued to use Mr. Mixon's valuable trademarks and goodwill without authorization, and only discontinued their infringement when faced with the threat of the instant litigation – essentially forcing plaintiffs to bring the present suit.  Moreover, the discontinuance of their use of Mr. Mixon's name has been conducted in such a manner as to further damage his intellectual property and reputation.

## JURISDICTION AND VENUE

4.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 as there is diversity of citizenship amongst the adverse parties and the amount in controversy, exclusive of costs and interest, is in excess of $75,000.

5.      This Court also has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a) and 1338(b); and this Court has supplemental jurisdiction over the state claims brought in this action under 28 U.S.C. § 1367(a).

6.      Defendants Pride and Joy Miami, LLC and Pride and Joy BBQ. LLC are subject to personal jurisdiction in the State of New York because: i) they agreed that any disputes arising under the agreement at issue in the instant litigation (which agreement defendants have since repudiated) would be governed by the laws of the State of New York; and ii) they transacted business in New York in connection with the facts giving rise to the instant litigation.

2

7.    Defendant Cardenas is subject to personal jurisdiction in New York, because, as a managing member and controlling owner of the corporate defendants, he directed Pride and Joy Miami, LLC's and Pride and Joy BBQ. LLC's willful infringement of plaintiffs' valuable trademarks, as well as their violation of Mr. Mixon's publicity rights in this State. Defendant Cardenas also transacted business in the State of New York in connection with the acts giving rise to the present action.

8.    Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to Plaintiff's claims against defendants occurred in this district, and because the corporate defendants agreed that the venue of any disputes would be resolved by the courts located in the County of New York.

PARTIES

9.    Plaintiff Myron Mixon ("Mixon") is an individual who resides in the State of Georgia.

10.    Mr. Mixon is a world renowned celebrity chef, specializing in barbeque ("BBQ").

11.    Mr. Mixon is the best-selling author of the cookbook, *Smokin' with Myron Mixon*, a judge on the reality show *BBQ Pitmasters;* he makes frequent appearances on national television programs, and has been named the Grand Champion at the World Barbeque Championship in Memphis, TN on three separate occasions. In fact, Mr. Mixon has won more BBQ competitions than anyone in the world, earning him the nickname: *"the winningest man in BBQ"*.

12    Plaintiff Jack's Old South, LLC ("JOS") is a limited liability company organized under the laws of the State of Georgia, with its principal place of business located at 2732 Pine St., Unadilla, GA 31091.

3

13.     JOS, which is owned by Mixon, is in the business of selling branded BBQ sauces, rubs and cooking equipment bearing the valuable trademarks, *Jack's Old South* and *Good Stuff.* JOS also owns and operates a cooking school and catering business.

14.     Upon information and belief, defendant Pride and Joy Miami, LLC d/b/a Pride & Joy, LLC ("PJM"), is a Florida limited liability company with its principal place of business located at 2800 N. Miami Ave., Miami, FL 33127.  PJM is engaged in the business of running a BBQ restaurant in Miami, FL, under the name "Pride and Joy".

15.     Upon information and belief, defendant Pride and Joy BBQ. LLC d/b/a Pride & Joy, LLC ("PJNY") is a New York limited liability company with its principal place of business located at 24 1st Avenue, New York, New York 10009.  PJNY was organized for the purpose of operating a BBQ restaurant in New York City.

16.     Upon information and belief, defendant Pablo Cardenas is an individual who resides in the State of Florida.  Upon information and belief, Mr. Cardenas is a managing member and majority owner of both PJM and PJNY; and has willfully directed and profited from the activities of both PJM and PJNY that give rise to the instant litigation.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

17.     Plaintiffs repeat and reallege the allegations of paragraphs 1 through 16 above as though set forth fully and at length herein.

18.     In or around December 2011 to January 2012, PJM's managing members (including defendant Cardenas) approached Mr. Mixon's agent, Michael Psaltis ("Psaltis") of the entity known as the Culinary Entertainment Agency, LLC for the purpose of soliciting Mr. Mixon's involvement in, and association with, a yet-to-be formed BBQ restaurant in Miami, Florida.

4

19.     Upon information and belief, on or around January 13, 2012, Mr. Cardenas caused PJM to be organized as a limited liability company under the laws of the State of Florida.

20.     Given Mr. Mixon's stature as a celebrity chef and the fact that he was known as the *"winningnest man in BBQ"*, PJM represented to Psaltis (and to Mixon) that the use of Mr. Mixon's extremely valuable name, likeness, goodwill, personality, publicity and recipes in connection with PJM, it would be extremely profitable for all involved.   Following this solicitation, negotiations ensued.

The March 2012 License Agreement

21.     Thereafter, on or around March 5, 2012, PJM and Mixon entered into an agreement entitled, *Myron Mixon / Pride and Joy Restaurant Partnership Agreement* (hereinafter the "2012 License Agreement").  A copy of the 2012 License Agreement is attached hereto as Exhibit A.

22.     Pursuant to the 2012 License Agreement, Mr. Mixon granted PJM the right to use Mr. Mixon's name and approved likeness in connection with a BBQ restaurant to be known as *Pride and Joy* (hereinafter the "Miami Restaurant"), and further agreed to lend his professional services and culinary expertise to the Miami Restaurant.

23.     In exchange for the license granted by Mr. Mixon, PJM agreed to pay Mr. Mixon a long term license fee for the use of his valuable name and likeness.  The compensation agreed to by PJM is set forth in Section 3 of the 2012 License Agreement, which provides, in part, as follows:

- "In consideration of the above, Mixon shall receive an upfront payment of forty thousand dollars ($40,000.00) ("Upfront Payment"), which shall be paid half ($20,000.00) upon signing of this Agreement and half ($20,000.00) when PJM receives the Certificate of Occupation [sic] for the Restaurant."

- "Beginning immediately upon the first day the Restaurant opens its doors to the public or otherwise conducts business, Mixon shall receive a guaranteed salary of seventy-five thousand dollars ($75,000.00) every year ("Salary"), such payment to be made quarterly to Mixon, as directed herein, and shall be made on the first day of the first month of each quarter of year that the Restaurant operates."

- "In addition, Mixon shall receive 10% of net profits from the Restaurant ("Net Participation"), such interest in the Restaurant shall continue for the life of the Restaurant, whether still operating under the currently planned opening name or another name, whether solely or jointing [sic] owned by PJM, or any licensee or assignee of PJM."

- "All payments shall be remitted within five (5) days from when they first become due. Failure to receive any payment shall be deemed a material breach of this Agreement." *(bullet points added for convenience of the Court)*

24.     Pursuant to Section 6 of the 2012 License Agreement, PJM further agreed to pay the annual license fee due and owing to Mr. Mixon for the entire term of the 2012 License Agreement, which term is defined in the 2012 License Agreement as being for "the life of the [Miami] restaurant."

The Miami Restaurant Launch

25.     Following entry into the 2012 License Agreement, PJM began an aggressive marketing campaign with respect to the opening of the Miami Restaurant.

26.     The entire marketing campaign was designed to exploit Myron Mixon's name and reputation, so much so that any reasonable third person would assume that Mr. Mixon owned PJM.

27.     Through news and web articles, Twitter feeds and Facebook postings, PJM capitalized on its association with Mr. Mixon for the purpose of launching the Miami Restaurant.

28.     While PJM continued to promote Mr. Mixon's name and likeness through social media channels, PJM also designed the Miami Restaurant to highlight its association with Mr. Mixon, and both the outside and inside of the Miami Restaurant were covered with Mr. Mixon's

6

name, likeness, and trademark "Myron Mixon", and the valuable trademarks of JOS, namely the trademarks "Jack's Old South" and "Good Stuff". For example, both the interior and exterior of the Miami Restaurant were covered with Mr. Mixon's quotes and pictures, Mr. Mixon's name appeared throughout the restaurant, and two separate beer can sculptures depicting his name, and likeness, respectively, appeared prominently in the Miami Restaurant. In addition, PJM's menu was entirely of Mr. Mixon's design and various dishes bore his name, such as Myron's Chicken.

### Initial Breach of the 2012 License Agreement

29.     Pursuant to the 2012 License Agreement, PJM made payment of the required $40,000 to Mr. Mixon.

30.     When the Miami Restaurant officially opened in October 2012, however, PJM was obligated to pay the first quarterly license fee payment to Mr. Mixon in the amount of Eighteen Thousand Seven Hundred Fifty Dollars ($18,750). PJM failed to make this payment.

31.     Pursuant to the 2012 License Agreement, PJM was required to make a further quarterly license fee payment to Mr. Mixon in the amount of Eighteen Thousand Seven Hundred Fifty Dollars ($18,750) on January 1, 2013. PJM also failed to make this payment.

### The New York Restaurant and the January 2013 Amendment.

32.     Upon information and belief, defendant Cardenas, the controlling managing member of PJM, caused the formation of defendant PJNY on or around November 8, 2012.

33.     At or around this same time, in early November 2012 (approximately one month after the Miami Restaurant opening), PJM approached Mixon and suggested the opening of a second Pride and Joy restaurant in New York (the "New York Restaurant") and the use of Mr. Mixon's name and likeness in connection therewith.

7

34.     However, and as set forth above, PJM had, at the time, failed to make the required Eighteen Thousand Seven Hundred Fifty Dollars ($18,750) payments to Mr. Mixon (totaling $37,500), which were due to be paid to Mr. Mixon in October 2012 and on January 1, 2013.

35.     Given PJM's failure to pay the required quarterly license fee as required by the March 2012 License, and the intended launch of a second Pride and Joy location, PJM sought to renegotiate the 2012 License Agreement and requested that the license fee be increased from $75,000 a year (paid quarterly) to $100,000 a year (paid bi-annually), in return for Mr. Mixon's agreement to waive the past due payments of $37,500 due and owing to Mr. Mixon

36.     Thus, the parties began negotiations to amend the 2012 License Agreement.

37.     Following these negotiations, Mr. Mixon agreed to allow PJM to exploit Mr. Mixon's valuable name, likeness and trademarks with respect to the New York Restaurant.

38.     To this end, on or around January 25, 2013, JOS f/s/o Myron Mixon, entered into an amendment to the 2012 License Agreement with the entity referred to as "Pride & Joy, LLC", which entity, upon information and belief, does not exist, but instead is, upon information and belief, an assumed business name of defendants PJNY and PJM.

39.     The terms and conditions of the amendment are memorialized in a January 18, 2013 letter agreement, the subject line of which reads *"Re: AMENDMENT to the AGREEMENT titled* [sic] *"Myron Mixon /Pride and Joy Restaurant Partnership Agreement" in regards to barbeque restaurants, both existing and contemplated"* (hereinafter referred to as the "2013 Amendment").

40.     Pursuant to the 2013 Amendment, PJNY and PJM, doing business as "Pride & Joy LLC", agreed with JOS f/s/o Myron Mixon that the 2012 License Agreement would be amended to provide, *inter alia*, that:

a.  Mr. Mixon's license fee would be increased from $75,000 for each year a Pride and Joy restaurant is open, to $100,000 per year for each year a Pride and Joy restaurant is open, regardless of the number of Pride and Joy Restaurants that are open;

b.  Such license fee would be paid Fifty Thousand Dollars ($50,000) on January 20th and July 1st of each year;

c.  Mr. Mixon would receive 10% of the net profit participation for each restaurant location; and

d.  Mr. Mixon would receive a 10% ownership and voting right with respect to each Pride and Joy restaurant in operation.

41.  On January 18, 2013, Mr. Mixon's agent, Michael Psaltis, sent a draft of the 2013 Amendment to PJM and PJNY's members.  On that same day, PJM and PJNY provided comments to the January 2013 Amendment.

42.  Later that same day, Mr. Psaltis sent a revised version of the 2013 Amendment, with changes consistent with PJM's and PJNY's comments.

43.  In response, one of PJM and PJNY's members, Mr. Chris Mayer, sent Mr. Psaltis a text message which read: *"Thanks for quick response on changes, just waiting to hear back from partners."*

44.  On January 23, 2013, Mr. Psaltis sent a text message to Mr. Mayer which read: *"Hey Chris, I spoke to Mike and Paul* [two of the five PJM and PJNY members] *yesterday and they were good with Myron revised agreement. Are you?  If so, can we get that done and him paid?"*

45.  In response Mr. Mayer wrote: *"Yes sir, just waiting for these idiots* [being, upon information and belief, the remaining members] *but all good with me.  Can you e-mail me the wire info?"*

9

46.     On January 25, 2013, Mr. Psaltis then sent a request for the funds due to Mr. Mixon under the 2013 Amendment. Mr. Mayer responded with a text message that stated: *"Yeah, I'm on it."* Shortly thereafter, PJM performed under 2013 Amendment and wire transferred the $50,000 license fee required under the January 2013 Amendment. A copy of the fully negotiated 2013 Amendment, under which PJM and PJNY commenced performance, is attached hereto as Exhibit B.

47.     Upon information and belief, on January 22, 2013, approximately three (3) days prior to the issuance of the $50,000 license fee payment required by the 2013 Amendment, PJNY and PJM launched the Pride and Joy New York BBQ Facebook page with respect to the New York Restaurant. As was the case with the Miami Restaurant, PJNY and/or PJM began an aggressive marketing campaign, which was highlighted by its focus on PJNY's and PJM's association with Mr. Mixon.

48.     Despite having confirmed the fully negotiated agreement, and despite having made payment and having commenced use of Mixon's intellectual property to promote the New York Restaurant, PJNY has now attempted, upon information and belief, to pretend that it never entered into any agreement with Mr. Mixon with respect to the New York Restaurant. Upon information and belief, PJM and/or PJNY deleted the New York Restaurant Facebook page, but the cached version of the New York Restaurant Facebook page (attached hereto as Exhibit C) clearly demonstrates PJNY's exploitation of Mr. Mixon's name, likeness and trademarks in connection with the New York Restaurant pursuant to the 2013 Amendment.

49.     In addition, on May 21, 2013, PJNY and PJM held a pre-opening of the New York Restaurant at the space leased by PJNY, located at 24 1st Avenue, New York, NY. Mr. Mixon, members of PJNY and PJM were all in attendance.

50.     On July 1, 2013, the corporate defendants were obligated to make payment of the license fee pursuant to the 2012 License Agreement (as amended by the 2013 Amendment) in the amount of $50,000, however they failed and refused to make the license payment.

51.     On July 11, 2013, Mr. Mixon demanded, in writing, payment of the past due Fifty Thousand Dollar ($50,000) license fee, and further informed defendants that if they failed to immediately make the license fee payment to Mr. Mixon, Mr. Mixon would be forced to commence litigation to seek an injunction prohibiting any further use of Mr. Mixon's name, likeness and trademarks.

52.     In response, defendants, by their counsel, rejected the existence of the January 2013 Amendment, falsely (and incredibly) claimed that PJM and PJNY were not using Mr. Mixon's name, likeness or trademarks, and then unilaterally, and without cause or justification, repudiated the 2012 License Agreement based on unspecified breaches for which Mr. Mixon had received no prior notice.

## AS AND FOR A FIRST CAUSE OF ACTION
## FOR BREACH OF CONTRACT

53.     Plaintiffs repeat and reallege the allegations of paragraphs 1 through 52 as though set forth full and at length herein.

54.     Plaintiff Mixon entered into the 2012 License Agreement with PJM. The 2012 License Agreement is a valid and binding contract.

55.     Plaintiff JOS f/s/o Mixon entered into the 2013 Amendment with defendants PJM and PJNY, both d/b/a Pride & Joy, LLC. The 2013 Amendment is a valid and binding amendment to the 2012 License Agreement.

11

56.     Pursuant to the 2012 License Agreement, as amended by the 2013 Amendment, PJM and/or PJNY were contractually obligated to make payment of a $50,000 license fee to JOS f/s/o Mixon on July 1, 2013.

57.     PJM and PJNY failed to make the $50,000 license fee payment.  Such failure constitutes a material breach of the 2012 License Agreement as amended by the 2013 Amendment.

58.     As a result of PJM and PJNY's breach of such agreement, plaintiffs have been damaged in the amount of Fifty Thousand Dollars ($50,000) plus statutory pre- and post-judgment interest.

59.     In addition, even assuming that defendants' contention that the 2013 Amendment is not valid and binding is true (which it is not), defendants PJM and PJNY were obligated, under the 2012 License Agreement to make payments to Mr. Mixon of $18,750 in October 2012, and again on January 1, 2013, April 1, 2013, and July 1, 2013 for a total amount owed to Mr. Mixon of Seventy Five Thousand Dollars ($75,000).

60.     However, as of the date hereof, defendants have only paid Mr. Mixon $50,000 and thus are in material breach of the 2012 License Agreement and owe Mr. Mixon, regardless of whether or not the 2012 License Agreement was amended by the 2013 Amendment.

AS AND FOR A SECOND CAUSE OF ACTION<br>FOR ANTICIPATORY REPUDIATION

61.     Plaintiffs repeat and reallege the allegations of paragraphs 1 through 60 above as though set forth fully and at length herein.

62.     On July 11, 2013, plaintiffs wrote to defendants PJNY and PJM notifying defendants of their breach under the 2012 License Agreement and 2013 Amendment, and

12

demanded the immediate payment of the $50,000 license fee that was required to be paid to plaintiffs on July 1, 2013.

63.     Plaintiffs further placed defendants on notice that in the event PJNY and PJM failed to cure their breach, plaintiffs would have no choice but to discontinue the license for the use of Mr. Mixons' valuable name and likeness that had been granted pursuant to the 2012 License and subsequent 2013 Amendment.

64.     Plaintiffs performed all of their obligations under the 2012 License Agreement and 2013 Amendment.

65.     Plaintiffs were ready, willing and able to continue to perform their obligations under the 2012 License Agreement and 2013 Amendment, provided defendants PJNY and PJM cured their breach of having failed to make the required license payment of $50,000.

66.     In response to plaintiffs July 11, 2013 demand letter, defendants PJNY and PJM wrote (by their counsel) to plaintiffs on July 16, 2013.  In their July 16th letter, defendants: i) claimed that the 2013 Amendment was of no force and effect; and ii) conclusorily asserted that Mr. Mixon was in breach of his obligations under the 2012 License Agreement.

67.     Defendants had never before asserted or provided any prior notice of the purported unspecified breaches referred to in defendants' July 16, 2013 letter (and thus had provided no opportunity to cure).  Moreover, with their July 16, 2013 letter, defendants then unilaterally (and without justification) terminated the 2012 License Agreement.

68.     Defendants' unilateral and improper termination of the 2012 License Agreement constitutes an anticipatory breach / repudiation of the 2012 License Agreement.

69.     In addition, defendants' failure and refusal to recognize that the 2013 Amendment is of full force and effect constitutes an anticipatory breach /repudiation of the 2013 Amendment.

13

70.     Defendant PJM's and PJNY's anticipatory breach / repudiation of the 2012 License Agreement and 2013 Amendment entitles plaintiffs to a claim for total damages due under the 2012 License Agreement and 2013 Amendment, which damages consist of the guaranteed $100,000 license fee due each year to Mr. Mixon for the balance of the term of these agreements.

71.     The "Term" of the 2012 License Agreement (as amended) is defined as being for "the life of the" restaurants.

72.     Accordingly, and as a result of PJNY's and PJM's repudiation of the 2012 License Agreement and the subsequent 2013 Amendment, plaintiffs have been damaged in an amount to be proven at trial but believed to be at least Eight Hundred Sixty-Eight Thousand Nine Hundred Eight Dollars ($868,908), plus statutory pre- and post-judgment interest which is calculated as follows: a) the annual guaranteed license payments of $100,000 due pursuant to the 2013 Amendment; b) multiplied by 10 years, which is a reasonable time period to apply to the life of the restaurants; and c) discounted to present value using a discount rate of 2.64% (the present ten year treasury rate) [i.e., $100,000 x 10 = $1,000,000, then discounted = $868,908].

73.     Alternatively, and as set forth in plaintiffs' fourth cause of action below, if defendants' refusal to recognize the validity of the 2013 Amendment is determined to not be an anticipatory breach of contract, then it is instead an admission by defendants that they willfully infringed Mr. Mixon's valuable trademark and misappropriated Mr. Mixon's name and likeness in connection with the anticipated launch of the New York Restaurant for which plaintiffs are entitled to damages and relief, as set forth below.

## AS AND FOR A THIRD CAUSE OF ACTION
## FOR GOODS DELIVERED BUT NOT PAID FOR

14

74.     Plaintiffs repeat and reallege the allegations of paragraphs 1 through 73 as though set forth fully and at length herein.

75.     In connection with the operation of the Miami Restaurant, PJM entered into multiple contracts with JOS between December 2012 and February 2013 for the purchase of BBQ rubs, sauces and cooking equipment (hereinafter the "Product").

76.     JOS delivered the Product to PJM, and provided invoices to PJM.

77.     The total invoiced amount for the already-delivered Product is Nine Thousand Sixty Two Dollars and Sixteen Cents ($9,062.16).

78.     PJM has failed and refused to pay for the Product.  The failure and refusal to pay for the Product constitutes a breach of contract.

79.     As a result of PJM's breach, JOS has been damaged in the amount of $9,062.16 plus statutory pre- and post-judgment interest.

AS AND FOR A FOURTH CAUSE OF ACTION
FOR TRADEMARK INFRINGEMENT

80.     Plaintiffs repeat and reallege the allegations of paragraphs 1 through 79 as though set forth fully and at length herein.

81.     Plaintiff Mixon is the owner of the trademark "Myron Mixon".

82.     Plaintiff Jack's Old South is the owner of the trademarks "Jack's Old South" and "Good Stuff".

83.     On July 1, 2013, defendants PJNY and PJM failed and refused to pay Mixon the license fee due and owing to Mr. Mixon under the 2012 License Agreement and 2013 Amendment pursuant to which PJM and PJNY had been exploiting Mr. Mixon's name, likeness and valuable trademark: "Myron Mixon", as well as JOS' valuable trademarks: "Jack's Old South" and "Good Stuff" – collectively the "Mixon Trademarks").

84. Despite failing to pay the license fee, defendant PJM continued to use the Mixon Trademarks.

85. On July 11, 2013, plaintiffs' counsel demanded that unless PJM and PJNY pay the license fee of $50,000 to Mr. Mixon, that Mr. Mixon would have no choice but to commence litigation seeking, *inter alia*, an injunction.

86. In response, on July 16, 2013, defendants, by their counsel, repudiated the 2012 License Agreement and 2013 Amendment, and further claimed that PJM was no longer using the Mixon Trademarks.

87. As of July 16, 2013, and continuing through July 27, 2013, PJM and PJNY continued to use the Mixon Trademarks, despite having no authorization to do so. Indeed, the Mixon Trademarks were featured on the home page of the www.prideandjoybbq.com website, which website also contained a link entitled: "LEARN ABOUT OUR HISTORY MYRON MIXON", which link contained a full page photo image of Mr. Mixon. Copies of the webpages are attached hereto as Exhibit D and Exhibit E, respectively.

88. In addition, with its July 16, 2013 letter, defendants claimed that the 2013 Amendment was of no force and effect. However, it is pursuant to the 2013 Amendment, and pursuant to no other grant of authority whatsoever, that PJM and PJNY were granted the right to use the Mixon Trademarks in connection with the launching of the New York Restaurant.

89. Thus, in the absence of any authority to use the Mixon Trademarks, from at least as early as January 22, 2013 through July 27, 2013, defendants PJNY and PJM, at the direction of defendant Cardenas, willfully and wantonly obtained the benefit of the goodwill and reputation that Mr. Mixon and JOS established in their trademarks, and used such trademarks in

16

order to create a likelihood of confusion or endorsement and association between defendants' restaurant and plaintiffs through the use of the Mixon Trademarks.

90.     The acts of defendants complained of herein, namely, and without limitation, soliciting the use of the Mixon Trademarks in order to obtain front-loaded value to launch the Miami Restaurant and to now be on the verge of opening the New York Restaurant despite having no authority to use the Mixon Trademarks in connection with the New York Restaurant, constitute infringement of plaintiffs' trademarks in violation of the Lanham Act.

91.     Moreover, although defendants have claimed to have ceased using the Mixon Trademarks, upon information and belief, they continue to benefit from their association with Mr. Mixon, and have undertaken the removal of Mr. Mixon's name from the Miami Restaurant in a manner designed to cause injury to Mr. Mixon's reputation and the Mixon Trademarks. For example, upon information and belief, rather than simply printing new menus, defendants are calling attention to their former association with Mr. Mixon by using a black marker to cross Mr. Mixon's name from the menu dish commonly known as Myron's Chicken.  Then, when customers inquire as to why Mr. Mixon's name has had a black marker drawn through it, defendants through their wait-staff have, upon information and belief, disparaged Mr. Mixon. Defendants' intentional defacement of Mr. Mixon's name and the Mixon Trademarks makes this an exceptional case as it constitutes an ongoing willful bad faith violation entitling plaintiffs to damages and the other relief requested herein.

92.     At all material times, defendants were acting in bad faith, with an intent to injure plaintiffs.

93.     Defendant Cardenas has, at all times overseen, directed and profited from the infringement alleged herein.

17

94.     Moreover, defendants conduct has caused irreparable damage to Mr. Mixon, and has irreparably decreased the overall value of the Mixon Trademarks, marks which Mr. Mixon and Jack's Old South have spent years cultivating.

### AS AND FOR A FIFTH CAUSE OF ACTION
### FOR MISAPPROPRIATION OF NAME AND LIKENESS

95.     Plaintiffs repeat and reallege the allegations of paragraphs 1 through 94 as though set forth fully and at length herein.

96.     By utilizing Mr. Mixon's name and likeness in connection with the intended launch of the New York Restaurant despite claiming to have no contractual authority to do so, and by using Mr. Mixon's name and likeness after repudiating the 2012 License Agreement, defendants have misappropriated Mr. Mixon's valuable name and likeness, for their own benefit and to the detriment of Mr. Mixon.

97.     Defendants' conduct constitutes common law misappropriation of name and likeness entitling plaintiffs to money damages in an amount to be determined at trial.

WHEREFORE, plaintiffs respectfully request judgment as follows:

a.      on plaintiffs' first cause of action for breach of contract, judgment in favor of plaintiffs and against defendants PJNY and PJM, jointly and severally, for damages in the amount of $50,000 plus pre- and post-judgment interest.

b.      on plaintiffs' second cause of action for anticipatory breach, judgment in favor of plaintiffs and against defendants PJNY and PJM, jointly and severally, for damages in the amount of $868,908, plus pre- and post-judgment interest.

18

c.      on plaintiffs' third cause of action for failure to pay for goods delivered, judgment in favor of plaintiffs and against defendants PJNY and PJM, jointly and severally, for damages in the amount of $9,062.16, plus pre- and post-judgment interest.

d.      on plaintiffs' fourth cause of action for trademark infringement, judgment in favor of plaintiffs and against defendants PJNY, PJM and Cardenas, jointly and severally, as follows:

i.      that the Court issue an order permanently enjoining defendants from using plaintiffs' trademarks in any form whatsoever;

ii.     that the Court issue an order directing defendants to engage in a corrective advertising campaign to alert the general public that there is no longer any association between plaintiffs and defendants, or the Pride and Joy restaurants, such campaign to either be approved by the Court or developed by plaintiffs;

iii.    that the Court order defendants to account to plaintiffs for all revenue and expenses in connection with the operation of the Miami Restaurant;

iv.     that the Court award to plaintiffs actual, consequential, special, punitive, and restitutionary damages, lost profits and other monetary relief in an amount to be proven at trial, said amount to be trebled as a result of the exceptional nature of this case; together with pre- and post-judgment interest, attorneys' fees, costs and such other and further relief as the Court deems just, proper and equitable under the circumstances.

e.      on plaintiffs' fifth cause of action for misappropriation of name and likeness, judgment in favor of Mixon and against defendants, jointly and severally, in an amount to be proven at trial; and

19

    f.      such other and further relief as the Court deems just, proper and equitable under the circumstances.

Dated: New York, New York
       August 7, 2013

By:   _____

Stephen Nakamura
Merle, Brown and Nakamura, P.C.
*Attorneys for plaintiffs*
90 Broad Street, Suite 2201
New York, NY 10004
Tel. 212-471-2990
Fax 212-471-2997
E-mail: s.nakamura@mbnpc.com

**EXHIBIT A**

## Myron Mixon / Pride and Joy Restaurant Partnership Agreement

This Agreement ("Agreement") is made this 1st day of March 2012 by and between Myron Mixon c/o The Cea d/b/a Psaltis Media LLC ("Mixon") with an address at 53 West 36ᵗʰ Street, Ste. 706, New York, NY 10018 and Pride and Joy Miami LLC ("PJM"), a Miami limited liability corporation, having a place of business at 2808 North Miami Avenue, Miami, Florida 33127.

WHEREAS, PJM has agreed to make Mixon a partnership, as stipulated herein and subject to the terms and conditions of this Agreement, in a restaurant currently titled Pride and Joy Restaurant ("Restaurant") and currently planned to be located at 2808 North Miami Avenue, Miami, Florida 33127, and currently scheduled to open in September 2012.

WHEREAS, Mixon has agreed to lend his professional services and culinary expertise, and name and approved likeness, subject to all conditions herein, to the Restaurant.

NOW, THEREFORE, the parties hereto agree as follows:

### 1. Mixon's Required Participation in Restaurant

Prior to the opening of the Restaurant, Mixon shall consult with PJM regarding all matters related to the kitchen, menu, food service, food ordering and other typical aspects of back-of-house operations. Mixon will consult with PJM's engineer, architect and/or contractor on the plans for the kitchen, including but not limited to the necessary equipment, specs for and placement of equipment. Mixon will consult on the hiring of all kitchen staff, and will train kitchen staff. Mixon will create the menu for the restaurant, and make all subsequent changes to the menu and have approval over any changes to the menu. Mixon will consult on initial food order and assist with creating systems for future orders. Mixon will commit to be present and available at the restaurant for overseeing the opening for an extended period of time, currently planned to be at least a week and as much as three weeks but subject to Mixon's professional availability and subject to PJM providing lodging for this one-time extended stay. For the first six months of operation, Mixon shall be present and available at the restaurant for periods of no less than two days every month to oversee operations. Thereafter, Mixon shall be present and available at the Restaurant at a minimum of two days every other month, or as otherwise reasonably agreed to between PJM and Mixon. It is understood that Mixon shall be responsible for creating, setting up and maintaining the Restaurant's high-level of food quality, and that the required time necessary to ensure that is subject to change by mutual agreement between PJM and Mixon, but subject to Mixon's professional availability.

However, none of the above responsibilities or anything else herein shall be construed as requiring Mixon to be financially responsible in any way for any costs associated with the Restaurant, including but not limited to any third-party professional or legal fees, licenses, build-out costs, expenses of any kind (including purchasing kitchen equipment, or any other equipment, smallware, flatware, serviceware, etc.), start-up capital, operating capital, and salaries. It is understood and agreed that Mixon's sole expertise, required time (and any additional time he elects to afford the Restaurant), and name and approved likeness are of considerable value and that providing said expertise, time and name and approved likeness

shall be Mixon's sole contribution to the Restaurant, and nothing herein shall obligate him to any out-of-pocket costs or fees or financial liability.

**2. Promotion of the Restaurant**

As requested by PJM but at all times subject to Mixon's reasonable availability and subject to Mixon's first-priority obligation to Discovery Communications Inc. and/or other professional obligations, Mixon shall participate in approved media for the launch of the Restaurant and the ongoing promotion of the Restaurant for as long as Restaurant is in operation. Mixon shall further make efforts to incorporate the Restaurant in his other marketing and publicity efforts, whenever reasonably possible, subject to his approval and that of any necessary third-parties. Mixon agrees to coordinate with PJM's publicists or publicity team. Subject to reasonable notification to PJM, Mixon shall be afforded opportunities to use the Restaurant for promotional opportunities (such as hosting book signings).

**3. Compensation**

In consideration of the above, Mixon shall receive an upfront payment of **forty thousand dollars ($40,000.00)** ("Upfront Payment"), which shall be paid half **($20,000.00)** upon signing of this Agreement and half **($20,000.00)** when PJM receives the Certificate of Occupation for the Restaurant. Beginning immediately upon the first day the Restaurant opens its doors to the public or otherwise conducts business, Mixon shall receive a guaranteed salary of **seventy-five thousand dollars ($75,000.00)** every year ("Salary"), such payment to be made quarterly to Mixon, as directed herein, and shall be made on the first day of the first month of each quarter of year that the Restaurant operates. In addition, Mixon shall receive 10% of net profits from the Restaurant ("Net Participation"), such interest in the Restaurant shall continue for the life of the Restaurant, whether still operating under the currently planned opening name or another name, whether solely or jointing owned by PJM, or any licensee or assignee of PJM. Should PJM sell or liquate the Restaurant, Mixon shall be entitled to 10% of all revenue from such sale or liquidation. Nothing herein shall be construed as creating an ownership or membership interest in Pride and Joy LLC. Net profits shall be defined as the Restaurant's gross revenue from all of its operations, whether food service or bar, on premise or offsite catering, private events, etc., less the defined opening costs, which shall be provided to Mixon no later than thirty (30) days after the first day of business, and the defined operating costs, which shall include but not be limited to any and all expenses, food costs, labor costs, insurances, permits, etc., and shall be made available to Mixon within thirty (30) days of his request, such request to be made no more often than four times in any year. Nothwithstanding anything herein to the contrary, Mixon's Salary shall be held against his net participation revenue and he shall only receive net participation allocations if such participation is greater than the Salary, and only in the amount of the excess (for example only, if Net Participation in a given year is equal to $100,000.00, then Mixon's allocation would be $25,000.00; if Net Participation in a given year is equal to $75,000.00 or less, Mixon shall not receive any allocation for that year), and such allocation shall be made on an annual basis. All years shall be accounted for separately, and any sale or license is not subject to the earnout of the Salary. All payments shall be remitted within five (5) days from when they first become due. Failure to receive any payment shall be deemed a material breach of this Agreement.

**4. Non-Competition and Future Restaurants**

Mixon and PJM both agree that neither party shall open another barbecue restaurant in Florida without first offering the other party the opportunity to be a partner in such restaurant. The offering party shall afford the other party fifteen (15) days from such offer to inform the offering party if it is interested in participating in such subsequent restaurant. Should they be interested in participating, Mixon and PJM agree to negotiate in good faith the terms for doing such restaurant. Should PJM or any other entity desire to open subsequent Pride and Joy Restaurants, or whatever name the Restaurant operates under, Mixon shall haven an option to be part of any and all such subsequent restaurants, whether in Florida or anywhere else throughout the world.

**5. Mixon's Name and Likeness**

Mixon grants PJM the use of his name and approved likeness for promotional purposes only and directly related to the Restaurant only. Such use shall at all times be subject to Mixon's approval. Nothing herein shall be construed as to grant the use of Mixon's name or likeness, or any of his trademarks (e.g., Jack's Old South), or any third-party names or trademarks (including but not limited to Discovery, Planet Green, Random House, BBQ Pistmasters), in any way without Mixon's explicit written approval, and only if he is able to grant such usage. Mixon shall have approval over any and all press releases, promotional material, signage, advertising copy, or any other material that uses his name and likeness. Nothing herein grants PJM to use Mixon's name or likeness for any merchandise or license, whether associated with the Restaurant or not. Mixon shall have approval over how his position and association with the Restaurant is defined (e.g., Chef and Owner).

**6. Term**

The term of this Agreement shall be for life of the Restaurant.

**7. Indemnification**

(a) PJM agrees to indemnify and defend Mixon and hold Mixon harmless from and against any and all third party claims, suits, collection activities, debts, damages, liabilities, costs, and expenses, including reasonable counsel fees, which may be obtained against, imposed upon or suffered by Mixon by reason of any uncured breach by PJM of this Agreement or from PJM's management or operation of the Restaurant or any activity or promotion related or as an extension of the Restaurant, whether PJM is found liable or not. Bad debts or other associated negative costs of the Restaurant shall be fully the responsibility of PJM, and any and all liabilities associated with the operation or running of the Restaurant shall be fully PJM's responsibility. Mixon is hereby released of any obligations related to the Restaurant. Further, Mixon will be listed as an insured party on any insurance that PJM has related to the Restaurant.

(b) Notwithstanding the above paragraph (a), Mixon agrees to indemnify and defend PJM and hold PJM and its directors, officers, employees, assigns, and licensees ("Indemnified Parties") harmless from and against any and all third party claims, damages, liabilities, costs, and expenses, including reasonable outside counsel fees, which may be obtained against, imposed upon, or suffered by the Indemnified Parties by reason of any uncured breach by Mixon of any representation or warranty made by Mixon under this Agreement.

## 8. Assignment

Neither party may assign any rights or obligations under this Agreement. Notwithstanding the foregoing, PJM reserves the right to transfer its rights and obligations resulting from this Agreement to any company that acquires a controlling interest in the Restaurant or substantially all of PJM or PJM's assets. Mixon may assign his financial interest in the Restaurant to a third-party at any time, as long as Mixon continues to adhere to all other terms of this Agreement and subject to the below Agency's clause.

## 9. Independent Contractor

Mixon is an independent contractor, and nothing in this Agreement shall be construed to (i) give either party the right to direct and control the daily activities of the other, (ii) allow either party to create or assume any obligation on behalf of the other party for any purpose whatsoever. Mixon is not an employee of PJM or the Restaurant and is not entitled to employee benefits, except for the Upfront Payment, Salary and Net Participation. Mixon acknowledges and agrees that Mixon is responsible for any taxes that may become due because of Mixon's participation in any activities related to this Agreement. All financial and other obligations are the sole responsibility of each party.

## 10. Agent Clause

Mixon hereby appoints Psaltis Media LLC d/b/a The Cea (attn: Michael Psaltis) (hereinafter "Agent") as the agent in all matters pertaining to this Agreement. All sums of money due hereunder shall be paid to and in the name of: Psaltis Media LLC, 53 West 36th Street, Ste. 706, New York, NY 10018 (Tax ID #: 30-0456720). Agent is hereby empowered by the Author to act in all matters arising from and pertaining to the Agreement. Agent shall be irrevocably coupled with an interest and Mixon does hereby irrevocably assign and transfer to Agent a sum equal to fifteen percent (15%) of all monies due, to be due or to become payable, including but not limited to the sale or buyout of Mixon's interest in the Restaurant and any and all revenue earned from any provision under this this Agreement, and such obligation shall carry forward to Mixon's heirs, executors, administrators, successors and assigns.

## 11. Confidentiality

The terms of this Agreement are confidential and neither PJM nor Mixon will communicate the terms to a third party other than their respective representatives and advisors or as otherwise required by law. In addition, neither PJM nor Mixon shall cause release any information about this Agreement without the prior consent of the other thereto.

13. **Additional Provisions**

This Agreement shall be governed by and construed in accordance with the laws of the State of New York. The venue of any dispute arising under this Agreement shall be in courts of the County of New York, in the State of New York and all courts with appellate jurisdiction therefrom.

If any provision of this Agreement is held to be invalid by a court of competent jurisdiction, the remaining provisions shall remain in full force and effect.

This Agreement constitutes the entire understanding of the Parties with respect to the subject matter contemplated herein. All prior negotiations, representations, agreements and understandings are superseded. No agreements, express or implied, and understandings, either oral or written, altering or supplementing the terms of this Agreement may be made except by a written document signed by the duly authorized representatives of the parties.

This Agreement shall not be amended, or any term modified, without the prior written consent of both parties. If an amendment or modification to this Agreement is desired, the parties shall, upon reasonable notice of the proposed amendment or modification by the party desiring such change, confer in good faith to determine the inclusion and acceptance of such modification. Such amendment or modification shall not take effect until a written amendment to this Agreement is signed by the parties or their representatives duly authorized to execute such amendment or modification.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the date written below.

Pride and Joy Miami LLC
By: _Michael Saladino_   DATE: _3/5/2012_
{Name of Officer} _Michael Saladino_
{Title}            _Operating Partner_

Myron Mixon

By: _____    DATE: _____

**EXHIBIT B**

## RE: Myron amendment

From: Michael Psaltis
Sent: Fri, Jan 18, 2013 at 1:13 pm
To:   'chris@prideandjoybbq.com'
Cc:   'mike@prideandjoybbq.com', 'jose@prideandjoybbq.com', 'pablex44@yahoo.com',
      'paul@prideandjoybbq.com'

---

Mixon_PJ_Amendment Agreement_rev_Clean.docx (136.1 KB)

Mixon_PJ_Amendment Agreement_rev1.docx (136.9 KB) — **Download all**

Chris,

All of these changes are fine by me. I've:

-- I put in language that said that voting rights will be parallel. Happy to define this more, but I think the voting rights need only be for major business decisions like selling off part or all of it.

-- I inserted "subject to approval" language for the expenses.

-- I changed the payment date.

-- And I've cut the mobile unit language. It's probably easier for us to just to do this in an e-mail confirmation once we have specifics of costs and that it's being delivered, etc.

Let me know if this looks good. I'm attaching a redlined version and a clean version.

Thanks,
Michael

---

**From:** chris@prideandjoybbq.com [mailto:chris@prideandjoybbq.com]
**Sent:** Friday, January 18, 2013 11:31 AM
**To:** Michael Psaltis
**Cc:** mike@prideandjoybbq.com; jose@prideandjoybbq.com; pablex44@yahoo.com;
paul@prideandjoybbq.com
**Subject:** Myron amendment

Michael,
        Got your text this morning, thought I would shoot you an email with my thoughts on a couple of things before we talk.

First, amendment states "Mixon shall be afforded an equitable amount of voting rights based on his ownership percentage, and shall be deemed a participating member in all respects, including the right to approve any sale or license of any or all of the Restaurant, whether a singular location or multiple locations, or any other major business situations." Our PJM partnership agreement gives every member equal voting rights, not based on ownership percentage, I'm not sure how Myron would fit into this arrangement although I do feel he should have the right to approve any sale or licence of the restaurant. However I think deeming him a " participating member in all respects" needs to be defined better.

Second, amendment states "Mixon shall be afforded the same rights to charge expenses back to the Restaurant, as any other partner" Our rights to charge back expenses are subject to approval of managing member, this should be reflected in amendment.

Third, as pertaining to mobile cooking unit, we would like to know exact costs of building unit before we agree to this arrangement, as amendment reads now it is not defined at all other than we shall be notified of cost. Furthermore, amendment states Myron "will receive 100% of the net profits (i.e., after any labor, food or other out-of-pocket expenses) from any catering or off-site events until he is repaid for these costs. After which and in consideration for having financed the mobile unit, Myron shall receive 50% of the net profits out of any catering or off-site events." This needs to be redefined as any catering or off-site events in which mobile unit is used.

Please let me know your thoughts, no problem to wire money once we iron this out and I get the ok from all my partners, perhaps also change amendment to reflect first payment is due January 20th, not the 15th so we are not in breach.lol

Thanks,
Chris Mayer



| January 1118, 2013

Pride & Joy Bar-b-Que
Attention: Mike Saladino
Via e-mail: mike@prideandjoybbq.com

Re: AMENDMENT to the AGREEMENT titled "Myron Mixon / Pride and Joy Restaurant
Partnership Agreement" in regards to barbecue restaurants, both existing and contemplated

Dear Mr. Saladino:

Reference is hereby made to that certain restaurant partnership agreement date March 1, 2012
(the "Agreement") between Myron Mixon c/o The Cea ("Mixon") and Pride and Joy Miami LLC
("PJM"), with respect to the partnership on barbecue restaurants now named Pride & Joy Bar-B-
Que. For good and valuable consideration, the receipt and sufficiency of which are hereby
acknowledged, the parties hereby agree that the Agreement shall be supplemented and amended
by this amendment ("Amendment") as follows:

Myron Mixon c/o The Cea d/b/a Psaltis Media LLC shall be amended to Jack's Old South, LLC
f/s/o Myron Mixon c/o The Cea d/b/a Culinary Entertainment Agency (hereinafter "Mixon" and
for any reference of "Mixon" in the Agreement) and Pride and Joy Miami LLC shall be amended
to Pride & Joy LLC (hereinafter "PJM" and for any reference of "PJM" in the Agreement).
Further, wherever Restaurant is used throughout the Agreement or this Amendment it shall be
inclusive of any and all Pride & Joy Bar-B-Que restaurants, unless specifically related to a single
location.

Mixon's compensation as defined in paragraph three (3) of the Agreement shall be revised and
replaced by the following: Each and every year that one or more Pride & Joy Bar-B-Que
restaurants are actively in operation and/or open for business Mixon shall receive an annual
payment of one hundred thousand dollars ($100,000.00), which shall be paid half (or
| $50,000.00) no later than January 15 20 of the given year and the second half (or $50,000.00) no
later July 1 of the given year. Such compensation shall remain the same regardless of the number
of outlets of the Restaurant may be in operation.

In addition, Mixon shall receive ten percent (10%) of Net Participation (as defined in the
Agreement) from each and every Restaurant, such accounting shall be done on a single
restaurant basis and not joint-accounted (i.e., Mixon shall receive net participation from each
restaurant as soon as such may become due regardless of whether one or more of the other

restaurants has earned back its initial capital investment). PJM shall provide Mixon within three (3) months from the opening of any location of the Restaurant a statement detailing any and all opening capital investments made by any member of PJM or other party, and such amount shall be deemed the earnback threshold prior to Mixon's receiving any net participation ("Earnback"). However, besides the majority partner or any other partner that has made a capital contribution greater than one hundred thousand dollars ($100,000.00), should any member of PJM receive any net participation from any restaurant, Mixon shall also be due his net participation as defined herein and in the Agreement.

Further, Mixon shall be immediately and irrevocably granted a 10% equity and ownership of each and every Restaurant, including but not limited to the locations in Miami, Florida, and New York, New York. PJM has informed Mixon that per the existing PJM partnership agreement that each partner is granted an equal voting right. Per this Agreement, Mixon shall also be afforded an equal voting right in addition or alongside any and all partners of PJM an equitable amount of voting rights based on his ownership percentage, and shall be deemed a participating member in all respects, including but not limited to the right to approve any sale or license of any or all of the Restaurant, whether a singular location or multiple locations, or any other major business situations.

Subject to the approval of PJM and/or its managing member, Mixon shall be afforded the same rights to charge expenses back to the Restaurant, as any other partner, and shall have a shared right to use any leased property of the Restaurant. Except for special events (such as the SOBE festival), Myron will pay for his own travel and accommodations to be at the restaurant. However, he will be provided use of the NYC apartment for stays while working on the restaurant.

In addition, as pertains to the mobile cooking unit that Mixon is providing the Restaurant, it has been agreed that Myron shall notify PJM of the costs of building the unit and will receive 100% of the net profits (i.e., after any labor, food or other out-of-pocket expenses) from any catering or off-site events until he is repaid for these costs. After which and in consideration for having financed the mobile unit, Myron shall receive 50% of the net profits out of any catering or off-site events. These terms will be carried forward for any future mobile cooking unit provided to the Restaurant.

The parties acknowledge and agree that this Amendment may be executed in one or more separate counterparts, each of which, when so executed shall, together, constitute and be one and the same instrument. A signed counterpart transmitted as a scanned email attachment or by facsimile shall be deemed an original. Except as otherwise herein amended and supplemented the Agreement between the parties is in all other aspects ratified and confirmed.

AGREED TO AND ACCEPTED BY:


Michael Saladino                                    MYRON MIXON

The Culinary Entertainment Agency
53 W 36th Street, Suite 706
New York, NY 10018
www.the-cea.com

PRIDE AND JOY MIAMI LLC



January 18, 2013

Pride & Joy Bar-b-Que
Attention: Mike Saladino
Via e-mail: mike@prideandjoybbq.com

Re: AMENDMENT to the AGREEMENT titled "Myron Mixon / Pride and Joy Restaurant Partnership Agreement" in regards to barbecue restaurants, both existing and contemplated

Dear Mr. Saladino:

Reference is hereby made to that certain restaurant partnership agreement date March 1, 2012 (the "Agreement") between Myron Mixon c/o The Cea ("Mixon") and Pride and Joy Miami LLC ("PJM"), with respect to the partnership on barbecue restaurants now named Pride & Joy Bar-B-Que. For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree that the Agreement shall be supplemented and amended by this amendment ("Amendment") as follows:

Myron Mixon c/o The Cea d/b/a Psaltis Media LLC shall be amended to Jack's Old South, LLC f/s/o Myron Mixon c/o The Cea d/b/a Culinary Entertainment Agency (hereinafter "Mixon" and for any reference of "Mixon" in the Agreement) and Pride and Joy Miami LLC shall be amended to Pride & Joy LLC (hereinafter "PJM" and for any reference of "PJM" in the Agreement). Further, wherever Restaurant is used throughout the Agreement or this Amendment it shall be inclusive of any and all Pride & Joy Bar-B-Que restaurants, unless specifically related to a single location.

Mixon's compensation as defined in paragraph three (3) of the Agreement shall be revised and replaced by the following: Each and every year that one or more Pride & Joy Bar-B-Que restaurants are actively in operation and/or open for business Mixon shall receive an annual payment of one hundred thousand dollars ($100,000.00), which shall be paid half (or $50,000.00) no later than January 20 of the given year and the second half (or $50,000.00) no later July 1 of the given year. Such compensation shall remain the same regardless of the number of outlets of the Restaurant may be in operation.

In addition, Mixon shall receive ten percent (10%) of Net Participation (as defined in the Agreement) from each and every Restaurant, such accounting shall be done on a single restaurant basis and not joint-accounted (i.e., Mixon shall receive net participation from each restaurant as soon as such may become due regardless of whether one or more of the other

restaurants has earned back its initial capital investment). PJM shall provide Mixon within three (3) months from the opening of any location of the Restaurant a statement detailing any and all opening capital investments made by any member of PJM or other party, and such amount shall be deemed the earnback threshold prior to Mixon's receiving any net participation ("Earnback"). However, besides the majority partner or any other partner that has made a capital contribution greater than one hundred thousand dollars ($100,000.00), should any member of PJM receive any net participation from any restaurant, Mixon shall also be due his net participation as defined herein and in the Agreement.

Further, Mixon shall be immediately and irrevocably granted a 10% equity and ownership of each and every Restaurant, including but not limited to the locations in Miami, Florida, and New York, New York. PJM has informed Mixon that per the existing PJM partnership agreement that each partner is granted an equal voting right. Per this Agreement, Mixon shall also be afforded an equal voting right in addition or alongside any and all partners of PJM, including but not limited to the right to approve any sale or license of any or all of the Restaurant, whether a singular location or multiple locations, or any other major business situations.

Subject to the approval of PJM and/or its managing member, Mixon shall be afforded the same rights to charge expenses back to the Restaurant, as any other partner, and shall have a shared right to use any leased property of the Restaurant. Except for special events (such as the SOBE festival), Myron will pay for his own travel and accommodations to be at the restaurant. However, he will be provided use of the NYC apartment for stays while working on the restaurant.

The parties acknowledge and agree that this Amendment may be executed in one or more separate counterparts, each of which, when so executed shall, together, constitute and be one and the same instrument. A signed counterpart transmitted as a scanned email attachment or by facsimile shall be deemed an original. Except as otherwise herein amended and supplemented the Agreement between the parties is in all other aspects ratified and confirmed.

AGREED TO AND ACCEPTED BY:


Michael Saladino                          MYRON MIXON
PRIDE AND JOY MIAMI LLC

**EXHIBIT C**

This is Google's cache of https://www.facebook.com/PrideAndJoyBbgNyc?filter=1. It is a snapshot of the page as it appeared on Jun 7, 2013 20:47:24 GMT. The current page could have changed in the meantime. Learn more
Tip: To quickly find your search term on this page, press **Ctrl+F** or □-**F** (Mac) and use the find bar.

These search terms are highlighted: **pride and joy bbq nyc facebook**                    Text-only version

Email or Phone                                         Passwc

☐ Keep me logged in                                    Forgot



# Pride and Joy BBQ NYC

580 likes · 158 talking about this · 23 were here

$$ (10-30) · Barbecue Restaurant
24 First Avenue, New York, NY.
(212) 933-1344                                                                    **58**

About                                         Photos        Likes

Posts by Page

 **Pride and Joy BBQ NYC**
May 29

We're getting so close to opening, we can almost taste the ribs in our mouth...Keep your eyes peeled for an official opening date!

 **Pride and Joy BBQ NYC** shared a
May 28 near New York, NY

More Myron from the NY Post.

**Get a 'cue!**



Like · Comment · Share

Candace Olah, Cory Edmister, Joe Kennelly and 35 others like this.

 **Roman Carlo Vasquez** i cant waiiiiiiiittt!!!
1 · May 29 at 11:43am

 **Pride and Joy BBQ NYC** We can't either!
May 29 at 11:50am

 **Janelle Woods** Can't wait for some real BBQ
1 · Wednesday at 4:48pm

View 6 more comments

 **Pride and Joy BBQ NYC** shared a link.
April 30 near New York, NY

We made Eater's NYC's 20 Most Anticipated Spring and Summer Openings! Though we will absolutely NOT have 20 TVs...ridiculous.

 **NYC's 20 Most Anticipated Spring and Summer Openings**
ny.eater.com

Though fall is typically the most exciting time to be a diner in New York City, the next three or so months will be packed


www.nypost.com · Like · Comment · Share

Ana Mercedes Cardenas, Andy Hollande
'How them hogs doin'?
this.

 **Roman Carlo Vasquez** cant wait fo
1 · May 28 at 7:58am

 **Pride and Joy BBQ NYC** shared a
May 24 near New York, NY

An interview with Myron Mixon.

 **A Souther**
**New York**
www.food

Myron Mixo
celebrated
boy raised

Like · Comment · Share

Charles Ramie, Ana Mercedes Cardenas
others like this.

 **Pride and Joy BBQ NYC** shared a
May 22 near New York, NY

Country's Best BBQ, RIGHT HERE IN

 **Bite into**
**right her**
m.nypost.

Memorial
to prove t
south of t

Like · Comment · Share

Ana Mercedes Cardenas, Pride and Joy
others like this.

 **William Bumbarger** So next week
May 22 at 12:30pm via mobile



Like · Comment · Share                                      15     6

 **Pride and Joy BBQ NYC** shared a link.
April 17

 **EV Grieve: Is this the last remnant of Lucky Cheng's?**
evgrieve.com

EV Grieve is an East Village blog where you'll find local news on the real estate, restaurants and residents of the East Village NYC.

Like · Comment · Share                                             1

 **Pride and Joy BBQ NYC** shared Pride and Joy BBQ's photo.
March 20

Here's a preview of what your future lunch may be here at NYC Pride and Joy BBQ... in meantime, maybe we should all escape the cold and head to Miami for The King's Rib?

It's Hump Day... and what better way to get over the midweek blues than The King's Rib.



Like · Comment · Share

**Pride and Joy BBQ NYC** Unf...
official opening date just yet.
May 22 at 12:34pm

 **Pride and Joy BBQ NYC** shared a
April 3

We got a small mention in the New Y...
today!

 **Off the M...
Dos Toro:
More**
www.nytin

Chelsea M:
Taqueria i:

Like · Comment · Share

 **Pride and Joy BBQ NYC** shared a
March 8

Happy Friday! Hope everyone is stayil
snowy day.

 **Ludella E
Face**

Sympathe
London - :
Record In

Like · Comment · Share

 **Pride and Joy BBQ NYC** shared a
March 4

If you haven't already been watching,
watch Myron compete against his big:

 **Father v:**

Subscribe
http://ww
enter?add
Competiti:
head to...

7     1

Like · Comment · Share

 **Pride and Joy BBQ NYC** changed their cover photo.
March 1

Our new sign! Soon to be hung at our NYC location.



Like · Comment · Share                              17

 **Pride and Joy BBQ NYC** shared a link.
February 28

How is everyone's Thursday so far? We're listening to some
Wanda Jackson and The Cramps in the office and getting ready
for the weekend.

 **Funnel Of Love - Wanda Jackson
(ft. the Cramps)**

Funnel Of Love (Charlie McCoy, Kent
Westberry) - Wanda Jackson ft. the
Cramps ( Heart Trouble, 2003)

Like · Comment · Share                              2

 **Pride and Joy BBQ NYC**
February 26

We could go for one of our Brisket Cheese Steaks right about
now...

 **Pride and Joy BBQ NYC** shared a
February 28

Hot off the press! We are proud to be
lower east side neighborhood, and ca
memories in our iconic space. Soon er
you all to come visit us.

 **Holy Smo
Getting E
Honky To
eastvillage

An update
Mixon's Pr

Like · Comment · Share

 **Pride and Joy BBQ NYC** shared a
February 27

We're also on Pinterest. Check us out

**Pride and Joy BBQ NYC**
pinterest.com

Pride and Joy BBQ is using
to collect and share what ir

Like · Comment · Share

 **Pride and Joy BBQ NYC**
February 25

What's your favorite beer to have witl



Like · Comment · Share



Like · Comment · Share                                    8    4

 **Pride and Joy BBQ NYC** shared a link.
February 22

The word is out! It's bigger and better this time! Again, if you are
lucky enough to be in Miami, tonight is the night to stop by Pride
and Joy BBQ! Tell your Miami friends too!

 **Smokin' Pig Patio Party with Myron Mixon
at Pride and Joy BBQ | SoFlaNights.com**
www.soflanights.com

Smokin' Pig Patio Party with Myron Mixon at
Pride and Joy BBQ

Like · Comment · Share                                         2

 **Pride and Joy BBQ NYC** shared a link.
February 22

A great article about our very own Myron Mixon.

**BBQ Pitmaster Myron Mixon Gives Barbecue Tips |
13wmaz.com**

 **Pride and Joy BBQ NYC** shared Pr
February 22

Watch Pride and Joy's Harlem Shake v
Miami location!

Here it is.... Our Harlem Shake! http
watch?v=P8FTW9tPM6c&feature=y

Like · Comment · Share

 **Pride and Joy BBQ NYC**
February 22

And it gets even better! Happy Hour c
TGIF and pig roast eating everyone!

HOG ROAST starts at 7pm. Come earl
1/2 OFF draft brews & Wine, 4-7 pm!
http://www.**facebook**.com/events/6:

 **Smokin' Pig Pa
Mixon**
February 22 at 7:0(
Pride and Joy BBQ

53 people went

Like · Comment · Share

 **Pride and Joy BBQ NYC** shared a
February 20

Here's another chance to meet Myron
action! And then, of course, taste his

http://www.southflorida.com/restaura



Like · Comment · Share          3     1

www.13wmaz.com

Think of Myron Mixon like the Michael Jordan of basketball or the
 Pride and Joy BBQ NYC Mixon's thing is whole hogs, brisket, and
ingeniutiy trophies he can across the planet in barbecue

Or how about some Shrimp and Grits? (photo courtesy of one of
our Miami patrons @Ivanapfel via Instagram)



Like · Comment · Share          2

Pride and Joy BBQ NYC was at Pride and Joy BBQ.
February 17

---

blog/sf-myron-mixon-bbq-winn-dixie-
20130218,0,3082730.story



**Myron M**
appears ·
Plantatio
www.sout

Myron Mi>
Destinatio

Like · Comment · Share

Pride and Joy BBQ NYC shared Pr
February 19

Hope everyone had a great long week
of our brunch items. Is your mouth w

Brisket Hash w/Poach Eggs & Horse
#BBQBrunch



Like · Comment · Share

Pride and Joy BBQ NYC
February 15



Like · Comment · Share                                                    10

 **Pride and Joy BBQ NYC** shared a link.
February 11

Our very own Myron Mixon will be at this year's South Beach
Wine and Food Festival! Get your tickets now and don't miss out
on all the fun.

**2013 SOBEWFF | FEB 21-24, 2013**
www.sobefest.com

The Food Network South Beach Wine & Food Festival presented by
FOOD & WINE is a national, star-studded, four-day destination event
showcasing the talents of the world's most renowned wine and spirits
producers, chefs and culinary personalities. Hosted by Southern Wine &

Like · Comment · Share                                                    3

 **Pride and Joy BBQ NYC**
February 7

Here is a preview of our "Boss Cobb" salad! Chicken, avocado,
tomato, bacon, cucumber and cheese deliciousness.

Anyone going to be in Miami next wee
is hosting another Patio Pig Roast...Yι

 **Smokin' Pig Pa**
**Mixon**
February 22 at 7:0(
Pride and Joy BBQ

53 people went

Like · Comment · Share

 **Pride and Joy BBQ NYC**
February 14



Like · Comment · Share

 **Pride and Joy BBQ NYC** shared M
Sales's photo.
February 6

Sneak peek at our Menu. It was only ·
our First Pride and Joy BBQ, and in se
NYC! Time flies when you are having



Like · Comment · Share                                           9

 **Pride and Joy BBQ NYC** shared a link via Joe Cortes.
February 6

One would not even recognize the interior of this legendary space anymore. It's all decked out Pride and Joy BBQ-style and brand new again!

 **EV Grieve: Myron Mixon's Pride & Joy BBQ now in the works for the former Lucky Cheng's space**
evgrieve.com

Like · Comment · Share                                           1

 **Pride and Joy BBQ NYC** shared Zelick Ian Gimelstein's status.
February 6

Check out what some of our fans in Miami are saying ...

---

Pride and Joy BBQ will be opening s
peek at the menu.



Like · Comment · Share

 **Pride and Joy BBQ NYC** shared Gr
February 6

Thanks Grace Bellanca Wieber! That's
NYC ...real BBQ is coming very soon!
smokers here in NYC can prepare 400

Myron Mixon at Pride and Joy BBQ i
us his personal recommendations: t
appetizer, the baby back ribs, and t

You should see their smokers - Meg

For all of you in New York City, kee
the new Pride and Joy BBQ at 1st &

Like · Comment · Share

I HIGHLY recommend Pride and Joy BBQ! Went there yesterday and had a killer meal! First TRUE BBQ place to hit the 305 in a long, long time. Shout out to Michael Saladino for helping to make this happen! P.S. Do yourselves a favor and order the Bowl O' Burnt Ends. You can thank me later.

Like · Comment · Share                                                                    1

 **Pride and Joy BBQ NYC** shared a link.
February 2

From pick up to delivery... the smokers are IN!! Let's start making some BBQ!

http://www.youtube.com/watch?v=vjcOgUSXtbo&feature=youtu.be


Pride & Joy Install

Like · Comment · Share                                         5    5    1

 **Pride and Joy BBQ NYC** shared a link.
February 1

We finally have a video of the custom made smoker installation at **Pride and Joy BBQ NYC**. While you watch, keep in mind that each smoker weighs around 5,500 pounds!


Pride & Joy Install

Like · Comment · Share                                                        3

 **Pride and Joy BBQ NYC**
February 1

 **Pride and Joy BBQ NYC** shared Pr
February 5

A little preview of our own twist on th

Our Rubbed Deviled Eggs. #lunchti



Like · Comment · Share

 **Pride and Joy BBQ NYC**
February 1

Another photo from one of our Miami Brisket sandwich anyone?

Hey Miami friends! Join us this Sunday for some delicious food, strong drinks, and football!



**BBQ Super Bowl Party!**
February 3 at 12:00pm in EST
Pride and Joy BBQ in Miami, Florida

30 people went

Like · Comment · Share                                    2

 **Pride and Joy BBQ NYC**
January 31

Isn't she a beauty?!



Like · Comment · Share                          8    4

 **Pride and Joy BBQ NYC**
January 31

Our second smoker coming in.



Like · Comment · Share

 **Pride and Joy BBQ NYC**
January 31





Like · Comment · Share                    8    1          Like · Comment · Share

 **Pride and Joy BBQ NYC**
January 30

Miami friends! Come and join us for our Super Bowl party this
Sunday at our Wynwood location. We will accepting reservations
for parties of 8 or more.

 **Pride and Joy BBQ NYC**
January 31

They're heeere! Our first smoker is of
(and so is Myron)!!!



Like · Comment · Share                                    4



Like · Comment · Share



**Pride and Joy BBQ NYC** shared a
January 29

Check out our mouth watering menu
www.prideandjoybbq.com We are all
have some of Myron Mixon's incredibl

**Pride & Joy BBQ**
www.prideandjoybbq.com

Like · Comment · Share



**Pride and Joy BBQ NYC** shared a link.
January 25

Check These out NYC!!! Coming SOON!!!!
http://youtu.be/5QZZ1ErVy9c

**COMING SOON TO NYC!**

These Rotisserie style smokers will be making their debut at Pride & Joy
BBQ in New York City. Check 'em out in person starting in March 2013!



**Pride and Joy BBQ NYC** shared a
January 28

We were mentioned on Eater.com! Cli
out!

**Pride And Joy Bbq : Eater NY**
ny.eater.com

Posts about pride and joy bbq on Eater N\



Like · Comment · Share     5     1     2



Like · Con

 **Pride and Joy BBQ NYC**
January 25

We also have a Twitter account! Pleas
developments and news regarding ou
@PridenJoyBBQnyc .

Like · Comment

 **Pride and Joy BBQ NYC** commented on a link.
January 22

Already mentioned in one of NYC's favorite newspapers – NY
Post… And if you have ever tried Myron Mixon's BBQ, I'm sure
you know how absolutely delicious and incomparable it is!

 **Pride and Joy BBQ NYC**
January 24

**Pride and Joy BBQ NYC**
**is on Facebook.** w us on Instagram: @prid

To connect with **Pride and Joy BBQ NYC**, sig

Like · Comment

| Sign Up | Log In |

> **2013 on a platter!**
> www.nypost.com
>
> Barbecue feasts

 **Pride and Joy BBQ NYC** changed
January 22

Like · Comment · Share                    2

Like · Comment · Share

 **Pride and Joy BBQ NYC** shared a link.
January 22

So excited!! My mouth is watering for Myron's BBQ just thinking
about it.

 **Pride and Joy BBQ NYC**
January 22

Here we are at the infamous old Luck
construction crew is working hard to r
into our second Pride and Joy BBQ!



> **Myron Mixon's Pride and Joy BBQ**
> **Will Open in the Old Lucky Cheng's**
> **Space**
> shar.es
>
> BBQ in the EV.

Like · Comment · Share

4



Like · Comment · Share

 This content cannot be dis

To help protect the security of in
website, the publisher of this con
displayed in a frame.

**EXHIBIT D**



**EXHIBIT E**



# MYRON MIXON

As a three-time world barbecue champion, Myron Mixon is the winningest man in barbecue.

He is the chief cook of the Jack's Old South Competition Bar-B-Que Team, the star of TLC and Destination America's BBQ Pitmasters and CBS's Ultimate Barbecue Showdown, and the author of the New York Times bestselling cookbook Smokin' with Myron Mixon: Recipes Made Simple, from the Winningest Man in Barbecue, which was published by Random House in May 2011. He is widely recognized as the most successful and charismatic man in barbecue.

In 2012, Myron returned as the judge of the hit TV show BBQ Pitmasters. The program was the anchor show for Discovery Communication's new channel Destination America and it

has been their biggest success. Singled out as a "franchise talent," the network is now developing a new show around Myron, as well as firming their plans for the return of BBQ Pitmasters for next year. This will be timed with the launch of the follow-up to Myron's bestselling cookbook in May 2013. Titled Everyday Barbecue, it will be an even more accessible book than his first cookbook, which continues to sell at a remarkable pace a year out.

In addition, Myron will open a major new restaurant in Miami's Wynwood neighborhood called Pride & Joy Bar B Que in September 2012. His line of sauces and seasonings, custom-built smokers, and other products will all be featured at the restaurant. He will also continue his cooking school that he hosts in sold-out classes in Unadilla, Georgia four to six times a year.



On the competitive barbecue front: Myron competed in his first competition in Augusta, Georgia, in 1996, where he took first place in whole hog, first place in pork ribs and third in pork shoulder. Since then, he's won more barbecue competitions than anyone else in the world. He's won over 210 grand championships resulting in over 1,700 total trophies, 30 state championships, 6 Team of the Year awards, and 11 national championships. Myron's team has taken three first place whole hogs at the Jack Daniels World Championship Invitational Barbecue Competition; has been the Grand Champion at the World Championship in Memphis three times: 2001, 2004 and 2007; and, has also taken first place in the Whole Hog category at the World Championship in: 2001, 2003, 2004 and 2007. And, his team is the only team to win Grand Championships in Memphis in May, Kansas City BBQ Society and Florida BBQ Association in the same year.

Myron has made numerous national television appearances, including on the Tonight Show with Jay Leno, The Late, Late Show with Craig Ferguson, Conan, ABC's Good Morning America, NBC's TODAY, and QVC; he's been featured on several television networks, including the Food Network, the Discovery Channel, the History Channel, the Travel Channel, and the Versus Network; has been on countless radio programs, and has been written about in many magazines and newspapers.

2012 © Pride & Joy. All rights reserved. Terms & Conditions