UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| MYRON MIXON and JACK'S OLD SOUTH, LLC, | ) ) ) | |
| Plaintiffs, | ) ) | 13 Civ. 5534 (JGK) |
| v. | ) ) | |
| PRIDE AND JOY MIAMI, LLC d/b/a PRIDE & JOY, LLC, PRIDE AND JOY BBQ, LLC d/b/a PRIDE & JOY, LLC and PABLO CARDENAS, | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS

**WILMER CUTLER PICKERING
HALE AND DORR LLP**

Peter J. Macdonald
Craig R. Heeren
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800
Fax: (212) 230-8888

*Attorneys for Defendants Pride and Joy
Miami, LLC, Pride and Joy BBQ, LLC,
and Pablo Cardenas*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND ............................................................................................................... 1

I.   The 2012 Contract Between Pride and Joy Miami, LLC and Myron Mixon
     Requires a Signed and Written Agreement to Modify or Supersede Its Terms ..................... 1

II.  The 2013 Documents Between Pride and Joy Miami, LLC and Myron Mixon
     Were Not Signed or Finalized ........................................................................................ 3

III. Mr. Cardenas Is Not Alleged to Have Engaged in Infringing Conduct ................................ 5

ARGUMENT ...................................................................................................................... 6

I.   The Contract Claims Based on the 2013 Documents Should Be Dismissed ......................... 6

II.  The Contract Claims Against PJNY Should Be Dismissed Because
     PJNY Is Not a Party to Any Contract ........................................................................... 12

III. The Trademark Infringment Claim Against Mr. Cardenas Should Be Dismissed .............. 13

CONCLUSION.................................................................................................................. 15

# TABLE OF AUTHORITIES

## CASES

Page

*Arcadian Phosphates, Inc. v. Arcadian Corp.*,
884 F.2d 69 (2d Cir. 1989)............................................................................9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................11, 14

*Bambu Sales, Inc. v. Sultana Crackers, Inc.*,
683 F. Supp. 899 (E.D.N.Y. 1988) .........................................................14, 15

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)....................................................................................6

*Braun v. CMGI, Inc.*,
No. 99 Civ. 12328, 2001 WL 921170 (S.D.N.Y. Aug. 14, 2001),
*aff'd*, 64 F. App'x 301 (2d Cir. 2003)......................................................9, 10

*Carell v. Shubert Organization, Inc.*,
104 F. Supp. 2d 236 (S.D.N.Y. 2000).....................................................13, 14

*Fisch v. New Heights Academy Charter School*,
No. 12 Civ. 2033 DLC, 2012 WL 4049959 (S.D.N.Y. Sept. 13, 2012 .................12

*Inter Impex S.A.E. v. Comtrade Corp.*,
No. 00 Civ. 0133, 2004 WL 2793213 (S.D.N.Y. Dec. 6,  2004)..........................13

*Ixe Banco, S.A. v. MBNA America Bank, N.A.*,
No. 07 Civ. 0432, 2008 WL 650403 (S.D.N.Y. Mar. 7, 2008) ..........................8, 9

*Jim Bouton Corp. v. Wm. Wrigley Jr., Co.*,
902 F.2d 1074 (2d Cir. 1990)................................................................10, 11

*Kleinberg v. Radian Group, Inc.*,
No. 01 Civ. 9295, 2002 WL 31422884 (S.D.N.Y. Oct. 29, 2002),
*adopted by* 240 F. Supp. 2d 260 (S.D.N.Y. 2002)..........................................8, 9

*LaRuffa v. Fleet Bank, N.A.*,
260 A.D.2d 299, 689 N.Y.S.2d 59 (1st Dep't 1999)........................................7

*Longo v. Shore & Reich, Ltd.*,
25 F.3d 94 (2d Cir. 1994) ....................................................................6, 10

*Metropolitan Steel Indus. v. Citnalta Construction Corp.*,
    302 A.D.2d 233, 754 N.Y.S.2d 278 (1st Dep't 2003) ........................................7, 8

*Myskina v. Condé Nast Publications, Inc.*,
    386 F. Supp. 2d 409, 420 (S.D.N.Y. 2005) ........................................15

*National Gear & Piston, Inc. v. Cummins Power Systems, LLC*,
    861 F. Supp. 2d 344 (S.D.N.Y. 2012) ........................................6, 9

*R.G. Group, Inc. v. Horn & Hardart Co.*,
    751 F.2d 69 (2d Cir. 1984) ........................................6, 9

*Rosecliff, Inc. v. C3, Inc.*,
    No. 94 Civ. 9104, 1995 WL 276156 (S.D.N.Y. May 10, 1995) ........................................6, 7, 9

*Scheck v. Francis*,
    26 N.Y.2d 466 (1970) ........................................6, 7

## STATUTES

N.Y. Gen. Obligation Law § 15-301 ........................................8

## PRELIMINARY STATEMENT

Plaintiffs Myron Mixon ("Mixon") and Jack's Old South, LLC ("JOS") (collectively "Plaintiffs") sue Defendants Pride and Joy Miami, LLC ("PJM"), Pride and Joy BBQ, LLC ("PJNY"), and Pablo Cardenas ("Mr. Cardenas") (collectively "Defendants") for breach of contract and trademark infringement.  Defendants move for partial dismissal of the Amended Complaint because Plaintiffs' claims are deficient in three respects.  *First,* Plaintiffs have failed to allege facts to support their claim that a draft, unsigned amendment to the original agreement constitutes a binding agreement between the parties, and therefore the contract claims based on that purported agreement should be dismissed.  *Second,* the contact claims against PJNY should be dismissed because that entity was not a party to any agreement with Plaintiffs.  *Third,* Plaintiffs' trademark infringement claim against Mr. Cardenas fails to allege any facts to plausibly demonstrate that he should be held personally liable for the alleged infringing conduct of PJM and/or PJNY.

## BACKGROUND

### I.      The 2012 Contract Between Pride and Joy Miami, LLC and Myron Mixon Requires a Signed and Written Agreement to Modify or Supersede Its Terms

Plaintiffs allege that, between December 2011 and January 2012, managing members of PJM and Mixon discussed opening a barbecue restaurant in Miami, Florida (the "Miami Restaurant").  Am. Compl. ¶ 18 [Dkt. 14].[1]  On or around March 5, 2012, the parties entered into an executed, written contract between "Myron Mixon c/o The Cea d/b/a/ Psaltis Media LLC" and "Pride and Joy Miami LLC."  *Id.* ¶ 21 & Ex. A at 40 (the "2012 Contract").[2]  Mixon was

---

[1] For purposes of this motion to dismiss only, Defendants assume well-pleaded factual allegations in the Amended Complaint to be true.

[2] The 2012 Contract, attached to the Amended Complaint, is not paginated.  Defendants identify the page by docket-stamped page number or, where possible, section number.

obligated to perform tasks and provide services, such as consulting on the hiring of staff and

supervising the restaurant's opening (*id.* at § 1), and also to grant PJM the use of his name and

likeness to promote the restaurant (*id.* at § 5). In return, Mixon received (1) an "upfront

payment" of $40,000; (2) a "guaranteed salary" of $75,000 per year, to be paid in quarterly

installments; and (3) "Net Participation," defined as 10% of "net profits" less Mixon's annual

salary. *Id.* at § 3. The 2012 Contract also contemplates Mixon's involvement in future

restaurants, and offers Mixon "an option to be part of any and all such subsequent restaurants."

Am. Compl. ¶ 23; Ex A § 4. The 2012 Contract is governed by New York law. Ex. A § 13.

The 2012 Contract was integrated and could not be superseded or modified except by a

subsequent written and fully-executed agreement between the parties. According to the plain

terms of the agreement:

> This Agreement constitutes the entire understanding of the Parties with respect to the
> subject matter contemplated herein. All prior negotiations, representations, agreements
> and understandings are superseded. **No agreements, express or implied, and**
> **understandings, either oral or written, altering or supplementing the terms of this**
> **Agreement may be made <u>except by a written document signed by the duly</u>**
> **<u>authorized representatives of the parties</u>.**
>
> **This Agreement shall not be amended, or any term modified, <u>without the</u>**
> **<u>prior written consent of both parties</u>.** If an amendment or modification to this
> Agreement is desired, the parties shall, upon reasonable notice of the proposed
> amendment or modification by the party desiring such change, confer in good
> faith to determine the inclusion and acceptance of such modification. **Such**
> **amendment or modification <u>shall not take effect until a written amendment</u>**
> **<u>to this Agreement is signed by the parties or their representatives duly</u>**
> **<u>authorized to execute such amendment or modification</u>.**

Ex. A § 13 (emphasis added).

PJM paid Mixon the upfront payment of $40,000. Am. Compl. ¶ 29. Plaintiffs allege

that, after the Miami Restaurant opened, PJM failed to pay Mixon required salary installments of

$18,750 in October 2012, January 2013, April 2013, or July 2013. *Id.* ¶¶ 30-31, 59. However,

Plaintiffs admit that Mixon received a $50,000 payment in January 2013. *Id.* ¶¶ 46, 60.

Plaintiffs claim that Defendants are in breach of the 2012 Contract as a result of the alleged failure to timely pay Mixon's salary, and because PJM and PJNY allegedly repudiated the agreement by notifying Mixon on July 16, 2013 that he was in breach of the 2012 Contract and "unilaterally terminat[ing]" the agreement.  *Id.* ¶¶ 59-60, 66-68.

## II.   The 2013 Documents Between Pride and Joy Miami, LLC and Myron Mixon Were Not Signed or Finalized

Consistent with the 2012 Contract, PJM "approached Mixon" in early November 2012 about the opening of a second restaurant in New York.  Am. Compl. ¶ 33 (the "New York Restaurant").  Plaintiffs allege that on January 18, 2013, Mixon's agent, Michael Psaltis, sent "a draft" of the purported "2013 License Agreement" to "PJM and PJNY's members," that "PJM and PJNY provided comments," and that Psaltis then sent a revised version of the document.  *Id.* ¶¶ 41-42.  Psaltis thereafter received a text message from a member of PJM and PJNY, Chris Mayer, that Mayer was "waiting to hear back from partners" regarding this draft document.  *Id.* ¶ 43.  Psaltis allegedly sent a subsequent text message to Mayer that two of five members of PJM and PJNY ("Mike [Saladino] and Paul [Thielecke]") "were good with Myron revised agreement," and again asked if Mayer was likewise "good" with the agreement.  *Id.* ¶ 44.  In response, Mayer sent a text message reply to Psaltis saying that he was okay with the document, but that he was still "waiting for" the remaining members who had not yet consented to this purported agreement.  *Id.* ¶ 45.  The remaining members included Pablo Cardenas, whom Plaintiffs identified as the "controlling managing member" and "controlling owner" of PJM.  *Id.* ¶¶ 7, 16, 32.  No further communications are alleged to have taken place until January 25, 2013, when Psaltis asked that funds be sent.  *Id.* ¶ 46.

Plaintiffs then allege that, "on or around January 25, 2013, JOS f/s/o Mixon, entered into an amendment to the 2012 [Contract]/new agreement with the entity referred to as 'Pride & Joy,

LLC', which entity . . . is, upon information and belief, an assumed business name of defendants PJNY and PJM."  Am. Compl. ¶ 38.  Plaintiffs allege that the "terms and conditions of the amendment/new agreement are memorialized in a January 18, 2013 letter agreement," and attach a copy of the purported "fully negotiated 2013 License Agreement" to the Amended Complaint. *Id.* ¶¶ 39, 46 & Ex. B (the "2013 Documents").[3]  The 2013 Documents consists of an email chain between various individuals (the "Email"), as well as a redlined letter and clean version of that same letter (the "Letter Draft").  *See* Ex. B.

The Letter Draft in the 2013 Documents is on the letterhead of "The Cea," the corporate entity operated by Mixon's agent, Michael Psaltis.  *See* Am. Compl. ¶ 18, Ex. B at 52-53.  It refers to the 2012 Contract, "between Myron Mixon c/o The Cea ('Mixon') and Pride and Joy Miami LLC ('PJM')" and states that "the parties hereby agree that the [2012 Contract] shall be supplemented and amended by this amendment ("Amendment") . . . :"  Ex. B at 52.  The last paragraph of the Letter Draft contemplates that it will be signed by the parties:  "The parties acknowledge and agree that this Amendment may be executed in one or more separate counterparts, each of which, **when so executed** shall, together, constitute and be one and the same instrument."  *Id.* at 53 (emphasis added).  This paragraph is followed by the phrase "agreed to and accepted by," a space for signatures, and signature blocks for "Pride and Joy Miami LLC" (via "Michael Saladino") and "Myron Mixon."  *Id.*  Plaintiffs do not allege that any version of the Letter Draft was ever signed by anyone.

Plaintiffs allege that, pursuant to the 2013 Documents, PJM and PJNY were obligated to provide Mixon (1) $100,000 per year "as opposed to $75,000 per year" under the 2012 Contract, in $50,000 installments twice a year; (2) "10% of the net profit participation for each restaurant

---

[3] The 2013 Documents are likewise not paginated, and the numbering here also refers to the docket-stamped page numbers.

location"; and (3) "10% ownership and equal voting rights with respect to each Pride and Joy restaurant in operation." Am. Compl. ¶ 40. Plaintiffs allege that PJM and PJNY paid the first $50,000 installment in January 2013, but failed to pay the second installment in July 2013. *Id.* ¶¶ 46, 56-57. Plaintiffs claim that PJM and PJNY are in breach of contract, based on the 2013 Documents, because PJM and PJNY failed to pay Mixon the second $50,000 payment, and because they repudiated the alleged agreement by asserting that it was not a valid and binding agreement. *Id.* ¶¶ 56-57, 66, 69.

### III.    Mr. Cardenas Is Not Alleged to Have Engaged in Infringing Conduct

Plaintiffs also bring causes of action for trademark infringement and misappropriation of name and likeness because Defendants allegedly failed to pay Mixon for the right to use his name and likeness pursuant to the 2012 Contract and 2013 Documents, but still continued to use the purported trademarks. Am. Compl. ¶¶ 86-87. They bring these causes of action not only against PJM and PJNY, but also Mr. Cardenas in his personal capacity. *Id.* at 20-21, ¶¶ d, e. Plaintiffs allege that Mr. Cardenas caused PJM and PJNY to be formed or organized, and was "a managing member and controlling owner" of both corporate entities. *Id.* ¶¶ 7, 16, 19, 32. They state that Mr. Cardenas was one of the managing members that "approached" Mixon's agent in December 2011 or January 2012 to inquire about Mixon's interest in the Miami Restaurant. *Id.* ¶ 18. Finally, Plaintiffs assert that Mr. Cardenas "over[saw], directed and profited from the infringement alleged herein," and that PJNY and PJM "willfully and wantonly obtained the benefit of the goodwill and reputation" of Plaintiffs' trademarks "at the direction of defendant Cardenas." *Id.* ¶¶ 92, 96.

## ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This showing "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  Instead, a complaint must "possess enough heft to show that the pleader is entitled to relief" and contain enough facts to state a claim to relief that is "plausible"—not merely speculative or possible.  *Id*. at 557, 559.

### I.      The Contract Claims Based on the 2013 Documents Should Be Dismissed

Plaintiffs claim that the 2013 Documents constitute a "valid and binding separate agreement" or an "amendment" to the 2012 Contract.  *See* Am. Compl. ¶ 55.  But "if the parties to an agreement do not intend it to be binding upon them until it is reduced to writing and signed by both of them, they are not bound and may not be held liable until it has been written out and signed."  *Scheck v. Francis*, 26. N.Y.2d 466, 469-70 (1970) (dismissing claim); *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 74 (2d Cir. 1984) ("Under New York law, if parties do not intend to be bound by an agreement until it is in writing and signed, then there is no contract until that event occurs") (citing *Scheck*); *see also Longo v. Shore & Reich, Ltd.*, 25 F.3d 94, 97 (2d Cir. 1994) (citing *Scheck* and concluding on summary judgment that employment agreement was invalid because "without the signatures of both parties, there was neither a binding oral nor written contract").  Dismissal at the pleading stage is warranted where the allegations themselves establish the necessity for a signed agreement.  *See, e.g., Scheck*, 26 N.Y.2d at 470 (affirming grant of motion to dismiss where parties contemplated signed writing); *Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 861 F. Supp. 2d 344, 356-57 (S.D.N.Y. 2012) (dismissing contract claim where the alleged agreement "remains unsigned"); *Rosecliff, Inc. v. C3, Inc.*, No. 94 Civ.

9104, 1995 WL 276156, at *5 (S.D.N.Y. May 10, 1995) (dismissing contract claim based on unsigned draft agreement).[4]

The Amended Complaint and its exhibits establish that no new or amended agreement came into existence here.  First, the 2012 Contract expressly stated that it could not be modified or amended until it was "signed by the parties."  Am. Compl., Ex A § 13.  And the Amended Complaint itself points to a draft, unsigned "amendment" as an alleged contract.  *Id.* ¶ 55.  Second, that draft itself provides that it constitutes a valid agreement "when so executed" by the parties, includes a signature line to establish that the contract is "agreed to and accepted by" the parties, and reflects unsigned signature blocks for PJM and Mixon.  *See id.* Ex. B at 53.  Although Plaintiffs invoke the conclusory assertions that it is "fully negotiated" and "valid and binding" (*id.* ¶¶ 46, 55), they do not allege that it was ever signed by anyone on behalf of either party, nor do they allege any facts apart from the exchange of emails, text messages, and drafts (which establish the absence of an amendment).  Even if the court were to look beyond the Letter Draft, it is plainly evident that Mixon knew that the Letter Draft was not binding, and the parties' signatures were needed.  As the Plaintiffs' own allegations indicate, Mixon's agent was told repeatedly that all of the members of PJM, including the "controlling managing member" and "controlling owner," did not yet agree to the Letter Draft.  Am. Compl. ¶¶ 41-45; Ex. B at 47-48.

"In short, both parties must plainly have understood that the agreement [was] to take effect only after they had signed [it] and, until that time, the matter was still in the stage of negotiations."  *Scheck*, 26 N.Y.2d at 470.  The intent to be bound by only a fully executed

---

[4] *See also Metro. Steel Indus. v. Citnalta Constr. Corp.*, 302 A.D.2d 233, 754 N.Y.S.2d 278, 279 (1st Dep't 2003) (dismissing breach claim for lack of executed written subcontract); *LaRuffa v. Fleet Bank, N.A.*, 260 A.D.2d 299, 689 N.Y.S.2d 59, 60 (1st Dep't 1999) ("No such signed writing was ever executed and there was, accordingly, no binding contract requiring the mortgage assignment.").

written agreement is fatal to Plaintiffs' breach of contract claims based on the 2013 Documents.
*See Metro. Steel Indus.*, 302 A.D.2d at 233, 754 N.Y.S.2d at 279 ("Plaintiff's breach of contract
claim was properly dismissed since it is undisputed that the parties were aware that there would
be no binding agreement until their execution of a written subcontract, which never occurred.").

Plaintiffs' claim is also deficient because New York law provides that "[a] written
agreement . . . which contains a provision to the effect that it cannot be changed orally, cannot be
changed by an executory agreement *unless such executory agreement is in writing and signed by
the party against whom enforcement of the change is sought . . . .*"  N.Y. Gen. Oblig. Law § 15-
301 (emphasis added); *see also Ixe Banco, S.A. v. MBNA Am. Bank, N.A.*, No. 07 Civ. 0432,
2008 WL 650403, at *8 (S.D.N.Y. Mar. 7, 2008) ("Under New York law, written agreements
expressly proscribing oral modification cannot be changed by oral executory agreement.").  The
2012 Contract contains just such a provision, which explicitly and repeatedly states that it cannot
be modified or amended unless embodied in a written agreement signed by the parties.  Am.
Compl., Ex A § 13.

Plaintiffs cannot plausibly allege that the 2013 Documents constitute a "valid and binding
amendment" to the 2012 Contract given such language.  *See* Am. Compl. ¶ 55.  The 2013
Documents are unsigned and therefore, under both the express terms of the 2012 Contract and
the requirements of N.Y. Gen. Oblig. Law § 15-301, are insufficient to constitute a valid
modification or amendment of the parties original agreement.  Any claims based on this
purported amendment should be dismissed.  *See Ixe Banco*, 2008 WL 650403, at *8-9
(dismissing breach of contract claim based on oral modification of contract that contained
provision that it could not be "waived, altered, amended[,] supplemented or modified except by
written instrument"); *Kleinberg v. Radian Grp., Inc.*, No. 01 Civ. 9295, 2002 WL 31422884, at

*5 (S.D.N.Y. Oct. 29, 2002) (Gorenstein, Mag. J.) (dismissing contract claim based on purported modification, and concluding that plaintiff's "handwritten notation in the margin of the Agreement" could not "constitute[] a valid modification given that it was not signed by the defendants"), *adopted by* 240 F. Supp. 2d 260 (S.D.N.Y. 2002); *Rosecliff,* 1995 WL 276156, at *5 (dismissing contract claim based on modification by unsigned draft agreement).

Plaintiffs' imply that, because there has been some alleged partial performance, the 2013 Documents constitute a binding agreement.  This argument is flawed.  Partial performance is "not dispositive, and in some cases it is given little weight."  *Nat'l Gear*, 861 F. Supp. 2d at 357-58.  While partial performance may in certain circumstances evidence an intent to be bound,[5] *see, e.g., R.G. Grp.*, 751 F.2d at 75-76, where, as here, "the language of the agreement is clear that the parties did not intend to be bound, the Court need look no further."  *Nat'l Gear*, 861 F. Supp. 2d at 356 (collecting cases); *see also Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 72 (2d Cir. 1989) ("we need look no further than the first factor").

PJM's intent to be bound by a signed writing can "readily be determined" by examining the face of the Letter Draft and the 2012 Contract it purports to amend, and therefore even "considerable partial performance" (which is absent here) is insufficient to support a contract claim.  *See Arcadian*, 884 F.2d at 72 (granting summary judgment where language of memorandum indicated that party "did not intend to be bound" despite partial performance); *Ixe Banco*, 2008 WL 650403, at *9 (dismissing claim based on modification, despite alleged partial

---

[5] The factors typically considered in determining whether there is an intent to be bound are: (1) whether there was an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement is the type that usually is in writing.  *See, e.g., Braun v. CMGI, Inc.*, No. 99 Civ. 12328, 2001 WL 921170, at *7 (S.D.N.Y. Aug. 14, 2001).  The Court need only consider the first factor where the contract language is clear that the parties did not intend to be bound without a signed writing.  *See Nat'l Gear*, 861 F. Supp. 2d at 356; *Arcadian Phosphates*, 884 F.2d at 72.

performance, where prior agreement required any amendment or modification to be signed by all parties and in writing); *Braun*, 2001 WL 921170, at \*9 (granting summary judgment and dismissing contract claim despite partial performance), *aff'd*, 64 F. App'x 301 (2d Cir. 2003).  In *Braun*, despite undisputed partial performance by the plaintiff of a more significant extent than is alleged here—the plaintiff was employed and worked for many months as CEO of one of the corporate defendants—the Court concluded that no contract existed because the communications between the parties did not demonstrate an intent to be bound, the draft agreements contained open terms, and because one draft contained a merger clause and execution page "further indicat[ing] that the parties intended to be bound only by a signed writing."  2001 WL 921170, at \*7-9.  Here, the Amended Complaint establishes the same elements.

The fact that *Braun*, a pre-*Iqbal* case, was decided on summary judgment does not dampen its application to this motion to dismiss.  There*,* plaintiffs alleged the existence of a binding *oral agreement* reflected by the performance.  *Braun*, 2001 WL 921170, at \*6; *see also, e.g., Longo*, 25 F.3d at 96 (plaintiff argued "that the extensive negotiations engaged in by the parties produced a binding oral agreement, even though the appellees did not sign the written agreement that resulted from those negotiations").  Discovery was undertaken to develop the record of those oral negotiations.  That is not the situation here; Plaintiffs allege only that the written exchange, including text messages, constitutes a valid and binding contract or amendment, and make no allegation that any oral (or other) communications formed the basis of the alleged 2013 agreement.

Similarly, in *Jim Bouton Corp. v. Wm. Wrigley Jr., Co.*, while discovery and a trial were necessary to untangle a lengthy history of negotiations and determine whether there was an intent to be bound based on some oral agreement, the Circuit concluded that, based on both New

York's statutory requirement for a signed agreement and "general principles of contract law," the undisputed facts demonstrated "beyond cavil that the parties did not intend to be bound until 'final papers' or an 'acceptable writing' was prepared and signed."  902 F.2d 1074, 1080-81 (2d Cir. 1990).  Like the plaintiff in *Bouton* who attempted to cobble together a mailgram and letter to assert that they "together" constituted an agreement, here, the allegations and attached documents demonstrate "the fallacy in this argument"—that the 2013 Documents "was not an agreement, but was instead a counterproposal that never was agreed to."  *Id.* at 1080.

Plaintiffs' own allegations demonstrate that (i) the 2012 Contract between the parties unambiguously required a signed writing for amendment or modification; (ii) the communications between the parties regarding the draft agreement indicated open terms and a lack of assent to be bound; and (iii) the 2013 Documents indicate the need for a signed amendment (as contemplated by the 2012 Contract), yet a draft document was left never signed by either party.  Under *Iqbal*, a plaintiff may not plead around such facts by simply making conclusory allegations of an alternative contract.  *Iqbal*, 556 U.S. at 678 ("[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do") (quotations and citation omitted).  Instead, a plaintiff must allege some facts that could sustain a plausible claim of such an agreement.  But the Amended Complaint identifies no such facts, and instead only alleges that the parties exchanged messages and drafts, but never agreed.  Binding and enforceable contract terms may not be rendered meaningless by the *ipse dixit* of a litigant.  *Id.* at 678-79 ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

## II.     The Contract Claims Against PJNY Should Be Dismissed Because PJNY Is Not a Party to Any Contract

"It is black letter law . . . that generally one who is not a party to a contract cannot be held liable for a breach of that contract." *Fisch v. New Heights Acad. Charter Sch.*, No. 12 Civ. 2033, 2012 WL 4049959, at *7 (S.D.N.Y. Sept. 13, 2012) (internal citation and quotations omitted). Here, Plaintiffs' contract claims against PJNY, whether predicated on the 2012 Contract or the 2013 Documents, should be dismissed because PJNY is not a party to either the original agreement nor the alleged amendment.

Plaintiffs affirmatively allege that the 2012 Contract is between Mixon and PJM, and the agreement itself plainly states that it is between Mixon and PJM.  *See* Ex A at 40; Am. Compl. ¶ 21 ("PJM and Mixon entered into an agreement").  The Amended Complaint makes no factual allegation of PJNY's involvement in the 2012 Contract, and the 2012 Contract language provides no basis to conclude that PJNY was subject to any liability based on its terms or conditions. Because PJNY is not a party to the 2012 Contract, any claim against PJNY on this basis should be dismissed.  *See Fisch*, 2012 WL 4049959, at *7 (dismissing breach of contract claim because "[i]t is undisputed that the Individual Defendants did not enter into a contract with Fisch in their individual capacities").

Plaintiffs' only purported basis for contractual liability against PJNY is the alleged "amendment" or "new agreement" embodied by the 2013 Documents.  *See* Am. Compl. ¶¶ 38, 40 (alleging that Plaintiffs "entered into an amendment" with "Pride & Joy, LLC" which was allegedly the "assumed business name PJNY and PJM").  This argument fails for two reasons.

*First*, the 2013 Documents do not constitute a valid and binding new agreement, or amendment to the original agreement.  *See supra* at 6-11.  Where there is no valid contract between the parties, no contractual liability can attach to PJNY based on its terms.

- 12 -

*Second*, even if the Plaintiffs have sufficiently alleged the existence of an agreement or amendment based on the 2013 Documents, PJNY is not a party to the purported agreement.  The Letter Draft is drawn as an "amendment" to the prior agreement "between Myron Mixon . . . and Pride and Joy Miami LLC."  Am. Compl., Ex. B at 52.  In the same sentence, it states that "the parties"—referring back to Mixon and PJM—"hereby agree that the Agreement shall be supplemented and amended by this amendment . . . ."  *Id.*  And, most significantly, the alleged agreement provides that it is to be executed by only two parties: Mixon and PJM.  *Id.* at 53.  The document nowhere references PJNY, let alone makes it a party.

Even accepting Plaintiffs' allegations as true that "Pride & Joy LLC" was an assumed business name of both PJNY and PJM, that term only purported to change the name of a party to the agreement, not to add a new party to the agreement.  *See* Am. Compl. Ex. B at 52 (stating that, in the 2012 Contract, "Pride and Joy Miami LLC shall be amended to Pride & Joy LLC").  Whatever new agreement or amendment to the 2012 Contract must be inferred, it was between Mixon and PJM, and any alleged claims are between those parties.  *See Inter Impex S.A.E. v. Comtrade Corp.*, No. 00 Civ. 0133, 2004 WL 2793213, at *2 (S.D.N.Y. Dec. 6, 2004) (dismissing contract claim based on breach of letter of credit that was allegedly assigned to third party because plaintiff "failed to allege that defendant . . . was a party to that Agreement.").

### III.   The Trademark Infringment Claim Against Mr. Cardenas Should Be Dismissed

Plaintiff's trademark infringement allegations are insufficient to support a claim of personal liability against Mr. Cardenas.  In order to assert personal liability against a corporate officer for a corporations' alleged trademark infringement, a plaintiff must demonstrate that the officer "authorized and approved the acts of unfair competition which are the basis of the corporation[']s liability."  *Carell v. Shubert Org., Inc.*, 104 F. Supp. 2d 236, 271 (S.D.N.Y.

- 13 -

2000); *see also Bambu Sales, Inc. v. Sultana Crackers, Inc.*, 683 F. Supp. 899, 913-14 (E.D.N.Y. 1988).  The plaintiff must show that the officer was a "moving, active conscious force" behind the infringement.  *Id.*

The Amended Complaint contains no such allegations.  Plaintiffs only allege that Mr. Cardenas (i) formed PJM and PJNY; (ii) was "a managing member and controlling owner" of both entities; and (iii) "approached" Mixon, along with other PJM managing members, about his potential involvement in the Miami Restaurant.  Am. Compl. ¶¶ 7, 16, 19, 32.  None of these factual allegations plausibly support a claim that Mr. Cardenas "authorized and approved the acts of unfair competition" or was the "moving, active, conscious force" behind the infringement. *Carell*, 104 F. Supp. 2d at 271; *Bambu*, 683 F. Supp. at 913-14.  Plaintiffs also claim that Mr. Cardenas "directed and profited from the infringement" and that PJNY and PJM "willfully and wantonly obtained the benefit of the goodwill and reputation" of Plaintiffs' trademarks "at the direction of defendant Cardenas." *Id.* ¶¶ 92, 96.  But these allegations are purely conclusory, and do not include any facts to explain how Mr. Cardenas actually directed or was a moving force in any alleged infringement.  Plaintiffs' allegations against Mr. Cardenas for trademark infringement are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" that "do not suffice" to state a claim. *Iqbal*, 556 U.S. at 678.  As such, the allegations against Mr. Cardenas fail to state a claim and should be dismissed.  *See Carell*, 104 F. Supp. 2d at 271 (dismissing claims against certain individual defendants because allegation that they "participated in some if not all" of the infringement was insufficient to state a claim); *Bambu*, 683 F. Supp. at 914 (granting summary judgment for defendant, president of company accused of trademark infringement, because "the evidence suggests that he had no involvement

at all in any wrongful act by [the corporation]").[6]

## CONCLUSION

For the foregoing reasons, Defendants respectfully requests that the Court (i) dismiss all contract claims based on the 2013 Documents; (ii) dismiss all contract claims against PJNY; and (iii) dismiss the infringement claims asserted against Mr. Cardenas.

Dated:     New York, New York               Respectfully submitted,
           October 25, 2013

                                            **WILMER CUTLER PICKERING
                                               HALE AND DORR LLP**

                                            By: /s/ Peter J. Macdonald_____
                                                Peter J. Macdonald
                                                Craig R. Heeren
                                                7 World Trade Center
                                                250 Greenwich Street
                                                New York, NY 10007
                                                Tel.: (212) 230-8800
                                                Fax: (212) 230-8888

                                                *Attorneys for Defendants Pride and Joy
                                                Miami, LLC, Pride and Joy BBQ, LLC,
                                                and Pablo Cardenas*

---

[6] Plaintiffs also assert a cause of action for "misappropriation of name and likeness."  There is no such common law claim in New York.  *See Myskina v. Condé Nast Publ'ns, Inc.*, 386 F. Supp. 2d 409, 420 (S.D.N.Y. 2005) ("[I]t is settled that the only judicially recognized relief in New York for violations of a right to privacy or publicity are the protections afforded against the commercial misappropriation of a person's name or picture, as set forth in Sections 50 and 51 [of New York Civil Rights law]. . . . There is no independent common law cause of action in the right to privacy or publicity.").  To the extent the Court concludes that any such claim can in fact be alleged, Defendants request dismissal of that claim against Mr. Cardenas because Plaintiffs likewise fail to allege any facts to show why he should be held personally liable for the corporations' alleged conduct.  *See Bambu*, 683 F. Supp. at 913 ("[a] corporate officer is individually liable for the torts he personally commits") (citation omitted).