UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MYRON MIXON and
JACK'S OLD SOUTH, LLC,

                              *Plaintiffs,*

                                                    13 Civ. 5534 (JGK)

            -against-

PRIDE AND JOY MIAMI, LLC d/b/a PRIDE
& JOY, LLC, PRIDE AND JOY BBQ. LLC
d/b/a PRIDE & JOY, LLC and PABLO
CARDENAS,

                              *Defendants.*
------------------------------------------------------------X


**PLAINTIFFS' MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

Page

**TABLE OF AUTHORITIES** ……………………………………………………(ii)

**INTRODUCTION** …………………………………………………………1

**PRELIMINARY STATEMENT** …………………………………………………1

**STATEMENT OF FACTS** …………………………………………………...2

The 2012 License Agreement …………………………………………………2

PJM's Breach of the 2012 License Agreement / PJM Seeks to Change the Deal ………………3

The 2013 License Agreement …………………………………………………4

The Corporate Defendants performance under the 2013 License Agreement…....……………..6

The New York Restaurant and the Corporate Defendants' continued performance……………...6

Defendants breach and repudiation ……………………………………………7

**ARGUMENT**…………………………………………………………7

I.   THE 2013 LICENSE AGREEMENT IS VALID, BINDING AND
     ENFORCEABLE AS TO DEFENDANTS' BREACH AND REPUDIATION…………8

II.  PJNY IS A PARTY TO THE 2013 LICENSE AGREEMENT…………………13

III. PLAINTIFFS HAVE SUFFICIENTLY ALLEGED A CLAIM
     FOR TRADEMARK INFRINGEMENT AGAINST CARDENAS………………13

**CONCLUSION** ……………………………………………………...15

## TABLE OF AUTHORITIES

### CASES

Page

*Anostario v. Vicinanzo,*
    59 N.Y.2d 662 (1983)..................................................................................10

*Arcadian Phosphates, Inc. v. Arcadian Corp.,*
    884 F.2d 69 (2d Cir. 1989)..........................................................................12

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)...............................................................................8, 9

*Bambu Sales, Inc. v. Sultana Crackers, Inc.,*
    683 F.Supp. 899 (E.D.N.Y 1988)...............................................................14

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ............................................................................8, 15

*Braun v. CMGI, Inc.,*
    2001 WL 921170 (S.D.N.Y. 2001)..............................................................11

*Brown Bros. Elec. Contractors v. Beam Constr. Corp.,*
    41 N.Y.2d 397 (1977)................................................................................12

*Carell v. The Shubert Organization, Inc.,*
    104 F.Supp.2d 236 (S.D.N.Y. 2000)............................................................14

*Club Haven Investment Company, LLC v. Capital Company of America, LLC,*
    160 F. Supp.2d 590 (S.D.N.Y. 2001) ...........................................................9

*Merrill Lynch Interfunding, Inc. v. Argenti,*
    155 F.3d 113 (2d Cir. 1998)................................................................... 9, 10

*National Gear & Piston, Inc. v. Cummins Power Systems, LLC,*
    861 F.Supp.2d 344 (S.D.N.Y. 2012)........................................................8, 12

*R.G. Group, Inc. v. Horn & Hardart Company,*
    751 F.2d 69 (2d. Cir. 1984).......................................................................12

*Rose v. Spa Realty Associates,*
    42 N.Y.2d 338 (N.Y. 1977).........................................................................9

*V'Soske v. Barwick,*
    404 F.2d 495 (2d Cir. 1968).......................................................................11

## STATUTES

Fed. R. Civ. P. 8……………………………………………………………………....…..1, 7, 15

Fed. R. Civ. P. 12……………………….……………………………………………....1, 7, 8, 15

N.Y. Gen. Oblig. Law § 15-301…………………………………………………………..7, 8, 9, 11

## INTRODUCTION

Plaintiffs Myron Mixon and Jack's Old South, LLC, submit this memorandum of law in opposition to the motion brought by defendants Pride and Joy Miami, LLC ("PJM"), Pride and Joy BBQ. LLC ("PJNY") (collectively the "Corporate Defendants") and Pablo Cardenas ("Cardenas") to dismiss some (but not all) of plaintiffs' claims pursuant to Rules 8(a) and 12(b)(6) of the Federal Rules of Civil Procedure (the "Motion").

## PRELIMINARY STATEMENT

Looking past defendants' attempts to obfuscate and unnecessarily delay the case and increase the cost of litigation, this is an otherwise simple case. Plaintiff Mixon licensed his name and likeness to the Corporate Defendants for use in connection with a Miami-based barbeque restaurant known as *Pride and Joy*. The Corporate Defendants failed to pay Mixon the contractually agreed-to license fee. After failing to make payment, the Corporate Defendants sought to renegotiate the parties' deal by adding the use of Mixon's name and likeness for a second *Pride and Joy* restaurant to be located in Manhattan, and by increasing the annual license fee to be paid to Mixon.

When it came time for the Corporate Defendants to pay, not only did they refuse to pay Mixon, they also repudiated their agreements with him. Following this repudiation, the Corporate Defendants, at the direction of their managing member, and majority owner, Cardenas, continued (and still to this day continue) to capitalize on Mixon's name and likeness, and to profit from their association with him.

The defendants Motion gets it wrong on both the law and facts; and the Motion is a waste of the parties' (and the Court's) time and resources, as it does nothing to limit or focus the issues. First, the 2013 License Agreement (defined below) between the Corporate Defendants and

plaintiffs is a valid and binding agreement.  Second, both PJNY and PJM were parties to the 2013 License Agreement.  Third, plaintiffs' allegations are more than sufficient to suggest that not only is it plausible, but highly probable, that defendant Cardenas is guilty of overseeing, directing, and profiting from the Corporate Defendants' willful trademark infringement, for which he must be held liable.[1]

## STATEMENT OF FACTS

Myron Mixon ("Mixon") is a renowned celebrity barbeque chef who has won more barbecue competitions than anyone in the world, earning him the nickname: *"the winningest man in BBQ"*. (¶¶ 10-11)[2]  From December 2011 to January 2012, defendant Cardenas and his business partners solicited Mixon's involvement in, and association with, a yet-to-be formed barbeque restaurant in Miami, Florida. (¶ 18)

Cardenas and his partners represented that given Mixon's celebrity stature (he's a three-time World Barbeque Champion, best-selling author, judge on the reality show BBQ Pitmasters, and frequent national television guest), everyone would profit if they were permitted to use Mixon's name and likeness in connection with the planned barbeque restaurant. (¶¶ 11, 20)

### The 2012 License Agreement

On January 13, 2012, Cardenas caused the formation of defendant Pride and Joy Miami, LLC ("PJM"), a Florida limited liability company, of which he is a managing member and the majority and controlling owner. (¶¶ 16, 19)  On March 5, 2012, PJM and Mr. Mixon entered into an agreement entitled: "Myron Mixon / Pride and Joy Restaurant Partnership Agreement"

---

[1]  Plaintiffs' amended complaint seeks damages for: a) breach of contract; b) repudiation; and c) trademark infringement.  Thus, as to defendants' delay-of-game tactics, regardless of how the Court rules on the Motion, plaintiffs' claims (breach of contract, repudiation and trademark infringement) will remain the same and the parties will have to, no matter what, litigate these claims.

[2]  Citations to plaintiffs' October 14, 2013 amended complaint, and the enumerated paragraphs therein, appear as "¶ __" or "¶¶ __".  Citations to the exhibits to the amended complaint appear as "Ex. __".

(hereinafter the "2012 License Agreement"). (¶ 21)  Under the 2012 License Agreement, Mixon agreed: a) to lend his name and approved likeness to a Miami-based barbeque restaurant to be known as *Pride and Joy* (hereinafter the "Miami Restaurant"); and b) to lend his professional services and culinary expertise to the Miami Restaurant. (¶ 22; Ex. A)

In exchange, PJM agreed to pay Mixon a $40,000 "Upfront Payment"; a long term license fee of $75,000 per year (paid in quarterly amounts of $18,750); and 10% of the net profits of the Miami Restaurant.  PJM agreed to make these payments to Mixon for the life of the Miami Restaurant. (¶ 23; Ex. A).  After entering into the 2012 License Agreement, PJM began an aggressive marketing campaign to promote the Miami Restaurant and the previously valueless *Pride and Joy* brand name.  (¶¶ 2, 26)

This aggressive marketing campaign conducted by PJM was designed to exploit Mixon's name, likeness and reputation, and to capitalize on PJM's association with Mixon. (¶¶ 26-27)  The Miami Restaurant itself (both inside and out) was covered with pictures of Mixon and his various well-known quotes. (¶ 28)  The inside of the Miami Restaurant prominently displayed two separate beer-can sculptures depicting Mixon's likeness. (Id.)  In addition, not only did Mixon design the Miami Restaurant's menu, the menu had various dishes branded with his name, such as, for example, *Myron's Chicken*. (Id.)

<u>PJM's Breach of the 2012 License Agreement / PJM Seeks to Change the Deal</u>

The Miami Restaurant opened in October of 2012. (¶30)  Under the 2012 License Agreement, PJM was therefore immediately required to pay the first quarterly license fee payment of $18,750 to Mixon. (Id.)  PJM failed to make this payment. (Id.)  The second quarterly license fee payment of $18,750 was due on January 1, 2013. (¶ 31)  PJM also failed to

make this payment. Both of these failures constituted a breach of the 2012 License Agreement. (Id.)

In early November 2012 (and after PJM's initial breach) PJM approached Mixon and solicited his involvement in, and the use of his name and likeness, with respect to the opening of a second *Pride and Joy* restaurant – this one in New York (the "New York Restaurant"). (¶ 33) However, as set forth above, because the Miami Restaurant had already opened, and PJM was already in breach of the 2012 License Agreement, it therefore sought to renegotiate the 2012 License Agreement. (¶¶ 34, 35) Specifically, PJM requested that Mixon waive the past due quarterly license payments totaling $37,500, in exchange for which the annual license fee would be increased from $75,000 per year (paid quarterly) to $100,000 (paid bi-annually). (¶ 35)

The 2013 License Agreement

Although PJM had just commenced soliciting Mixon to use his name and likeness in connection with the New York Restaurant, on November 8, 2012, defendant Cardenas caused the formation of defendant Pride and Joy BBQ. LLC ("PJNY") a New York limited liability company. (¶¶ 14, 32)[3] In January of 2013, a little over two months after Cardenas caused the formation of PJNY, Michael Psaltis (Mixon's agent) sent a draft letter agreement to the Corporate Defendants, the subject line of which read: *"Re: AMENDMENT to the AGREEMENT titled [sic] "Myron Mixon / Pride and Joy Restaurant Partnership Agreement" in regards to barbeque restaurants, both existing and contemplated"* (hereinafter the "2013 License Agreement"). (¶ 39) The draft 2013 License Agreement contained (see ¶ 40), *inter alia*, the following new terms:

---

[3]     Could PJNY's unauthorized exploitation of Mixon's name have been a *fait accompli*? Plaintiffs should be entitled to find out during discovery.

a)      that Mixon's license fee would be $100,000 per year (as opposed to $75,000 per year) for each year a Pride and Joy restaurant is open, regardless of the number of Pride and Joy restaurants that are open;

b)      that the $100,000 license fee would be paid $50,000 on January 15th, and $50,000 of July 1st of each year;

c)      that Mixon would be granted a 10% equity ownership of each and every restaurant, including but not limited to the locations in Miami, Florida, and New York, New York; and

d)      that the contracting parties were no longer Mixon and PJM, but were instead changed to plaintiff Jack's Old South, LLC f/s/o Myron Mixon, on the one hand, and "Pride & Joy LLC", on the other.

On January 18, 2013, PJM and PJNY, by member Chris Mayer, sent an e-mail to Psaltis (copied to PJM and PJNY's other members, Paul Thielecke, Jose Santa, Mike Saladino and defendant Cardenas) with comments and requested changes to the 2013 License Agreement. (¶ 41; Ex. B) PJM and PJNY did not request any changes regarding the license fee or 10% equity ownership. However, the Corporate Defendants did request that Psaltis *"also change [this] amendment to reflect [that the] first payment is due on January 20th, not the 15th so we [PJM and PJNY] are not in breach.[] lol[.]"*(See Ex. B)

Later that same day (January 18, 2013) Psaltis sent a revised version of the 2013 License Agreement to all of PJM and PJNY's members (including defendant Cardenas) which included the Corporate Defendants' requested changes. (¶ 42; Ex. B) In response, Mayer sent a text message to Psaltis which read: *"Thanks for quick response on changes, just waiting to hear back from partners."* (¶ 43) Following January 18, 2013, there were no further negotiations with respect to the 2013 License Agreement. Defendants' Motion makes no suggestion to the contrary.

The Corporate Defendants performance under the 2013 License Agreement

On January 22, 2013, PJM and PJNY launched the "Pride and Joy New York BBQ" Facebook page with respect to the New York Restaurant. (¶ 47) Then, on January 23, 2013, Psaltis sent a text message to Mayer which read: "*Hey Chris, I spoke to Mike and Paul* [2 of the 5 PJM and PJNY members] *yesterday and they were good with Myron revised agreement. Are you? If so, can we get that done and him* [Myron] *paid?*" (¶ 44) Mayer responded by text stating: "*Yes sir, just waiting for these idiots* [who, upon information and belief, were members Santa and defendant Cardenas] *but all good with me. Can you e-mail me the wire info?*" (¶ 45)

On January 25, 2013, Psaltis sent a request for the funds due to Mixon under the 2013 Agreement. (¶ 46) Mayer responded with a text that stated: "*Yeah, I'm on it.*" (Id.) PJM then transferred the $50,000 license fee due under the 2013 License Agreement. (Id.) Defendants have admitted same. [Def. Memo, p. 2]

The New York Restaurant and the Corporate Defendants' continued performance

As was the case with the Miami Restaurant, PJM and PJNY conducted an aggressive marketing campaign designed to highlight their association with Mixon, and continued to exploit Mixon's name and likeness through various social media channels, including the now since deleted New York Restaurant Facebook page. (¶¶ 47-48)

Moreover, at some point after November 11, 2012 (the date Cardenas caused the formation of PJNY), PJNY entered into a lease for the New York Restaurant space located at 24 1st Avenue, New York, NY. (¶ 49) Thereafter, on May 21, 2013, PJM and PJNY held a pre-opening of the New York Restaurant at the leased space. (Id.) The pre-opening was attended by Mixon, as well as members of PJM and PJNY. (Id.)

<u>Defendants' breach and repudiation</u>

On July 1, 2013, Pride & Joy LLC (the party to the 2013 License and a d/b/a of PJM and PJNY) was required to pay Mixon $50,000. (¶ 50)   The defendants failed to make this payment. (<u>Id</u>.) On July 11, 2013, Mixon demanded, in writing, payment of the $50,000 license fee. (¶ 51) In response, defendants' counsel rejected and repudiated the existence of the 2013 License Agreement, and incredibly (and falsely) claimed that PJM and PJNY were not using Mixon's name and likeness. (¶ 52)   Defendants then went on to unilaterally terminate and repudiate the 2012 License Agreement. (<u>Id</u>.)

On August 8, 2013, plaintiffs commenced the instant litigation.   Since commencing this action, the defendants have continued to use Mixon's name and likeness and continue to profit from their association with Mixon.  For example, on October 8, 2013, PJNY obtained a liquor license from the state of New York for the New York Restaurant, which will be opening imminently (¶¶ 73, 75); and on October 8, 2013, PJM opened a second location in Miami at the American Airlines Arena (where the Miami Heat play) (<u>Id</u>.).

## **ARGUMENT**

Defendants' Motion seeks dismissal, pursuant to Rule 8(a) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.   Specifically, the Corporate Defendants (PJM and PJNY) seek dismissal of plaintiffs' breach of contract and repudiation claims based on the 2013 License Agreement pursuant to NY General Obligations Law § 15-301; defendant PJNY seeks dismissal of all of plaintiffs' breach of contract and repudiation claims because it contends it is not a party to any agreement; and defendant Cardenas seeks dismissal of plaintiffs' trademark infringement claim on the ground that plaintiffs have failed to allege facts that are sufficient to support an

7

inference that it is "plausible" that Mr. Cardenas directed the Corporate Defendants' trademark infringement.[4]

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must deem well-pleaded factual allegations as true and must construe all reasonable inferences in favor of the non-moving party. See National Gear & Piston, Inc. v. Cummins Power Systems, LLC, 861 F.Supp.2d 344, 354 (S.D.N.Y. 2012).  The defendants, invoking Twombly and Iqbal, point out that a plaintiff cannot survive a motion to dismiss if the complaint's allegations merely provide a formulaic recitation of the elements of a cause of action.[5]  To this end, a plaintiff need only allege enough facts to state a claim for relief that is plausible on its face.  However, the necessity of plausibility "does not impose a probability requirement at the pleading stage."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007).

I.    THE 2013 LICENSE AGREEMENT IS VALID, BINDING AND ENFORCEABLE AS TO DEFENDANTS' BREACH AND REPUDIATION.

Despite all of the foregoing, the Corporate Defendants claim that the 2013 License Agreement is not binding because it was not signed, and N.Y.G.O.L. § 15-301 requires modifications to executory agreements to be in writing. The Corporate Defendants' argument, while sharp, is fatally flawed.

Although § 15-301 requires amendments to be in writing, it is well-settled law that under the doctrine of partial performance, an oral agreement or unexecuted agreement, is enforceable if either party has partially performed under the terms of such agreement, and such partial performance is unequivocally referable to the oral modification, and conferred some benefit on

---

[4]    Even if the Court grants defendants' motion, it would be a pyrrhic victory for defendants.  Defendants do not contest, and therefore concede, that Plaintiffs have alleged valid claims: a) against PJM for breach and repudiation of the 2012 License Agreement; and b) against PJM and PJNY for trademark infringement.

[5]    The allegations of plaintiffs' complaint go well beyond a mere formulaic recitation of the elements of a claim.  How do we know?  Because defendants' Motion does not seek to have this entire case dismissed.  Rather defendants merely seek, at the pre-answer stage, to pre-determine the identity of the ultimate judgment debtors

the party against whom enforcement is sought. See Club Haven Investment Company, LLC v. Capital Company of America, LLC, 160 F.Supp.2d 590, 592 (S.D.N.Y. 2001) (citing Merrill Lynch Interfunding, Inc. v. Argenti, 155 F.3d 113 (2d Cir. 1998)); Rose v. Spa Realty Associates, 42 N.Y.2d 338, 343-345 (N.Y. 1977).

Moreover, determining "whether a complaint states a plausible claim for relief . . . is a context specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Consider the context in the present matter:

- In early November 2012, after PJM failed to make the $18,750 quarterly license fee payment due under the 2012 License Agreement covering the Miami Restaurant, PJM solicited Mr. Mixon's involvement in the New York Restaurant. (¶ 30)

- On November 8, 2012, PJNY was organized in the state of New York. (¶ 32)

- The parties negotiated the terms of the 2013 License Agreement and the terms of their negotiations were reduced to writing. (¶ 38)

- Among the negotiated terms was the fact that the annual license fee would be increased from $75,000 per year (paid quarterly) to $100,000 (paid bi-annually in January and July of each year any Pride & Joy Restaurant was open). (¶ 40)

- On January 18, 2013, PJM and PJNY provided comments and requested changes to the draft 2013 License Agreement. Among the requests made was to have Psaltis (Mixon's agent) to "change [this] amendment to reflect [that the] first payment is due on January 20th, not the 15th so we [PJM and PJNY] are not in breach.[] lol[.]"(See Ex. B)

- The requested changes were made that same day and were sent back to PJM and PJNY. There were no further negotiations with respect to the 2013 License Agreement after January 18, 2013. PJM responded by saying: "Thanks for quick response on changes, just waiting to hear back from partners." (¶ 43) Following January 18, 2013, there were no further negotiations with respect to the 2013 License Agreement.

- On January 22, 2013, PJM and PJNY launched the Pride and Joy New York BBQ Facebook page with respect to the New York Restaurant. (¶ 47)

- On January 23, 2013, Psaltis sent a text message to Mayer which read: "Hey Chris, I spoke to Mike and Paul [2 of the 5 PJM and PJNY members] yesterday and they were

good with Myron revised agreement.  Are you? If so, can we get that done and him [Myron] *paid?"* (¶ 44)  Mayer responded by text stating: *"Yes sir, just waiting for these idiots* [who, upon information and belief, were members Santa and defendant Cardenas] *but all good with me.  Can you e-mail me the wire info?"* (¶ 45)

- On January 25, 2013, Psaltis sent a request for the funds due to Mixon under the 2013 Agreement. (¶ 46)  Mayer responded with a text that stated: *"Yeah, I'm on it."* (Id.)  PJM then transferred the $50,000 license fee due on the 2013 License Agreement. (Id.)

- The Corporate Defendants began an aggressive marketing campaign which highlighted Mixon's association with the New York Restaurant. (¶ 48)

- On May 21, 2013, the Corporate Defendants held a pre-opening at the New York Restaurant location at the space leased by PJNY.  Mr. Mixon, as well as members of PJNY and PJM attended. (¶ 49)

- PJNY has applied for, and has since obtained, a liquor license from the New York State Liquor Association. (¶ 73)

In the absence of the 2013 License Agreement, the Corporate Defendants had no basis or grant of authority to use Mr. Mixon's name and likeness in connection with the New York Restaurant.  To this end, there is no intelligible way to explain the Corporate Defendants conduct unless the Corporate Defendants believed that the 2013 License Agreement was valid and binding. See Merrill, 155 F.3d at 122 (referencing the Court of Appeals decision in Anostario v. Vicinanzo, 59 N.Y.2d 662, 664 (1983)).

Indeed, after the 2013 License Agreement had been fully negotiated, on January 22, 2013 the Corporate Defendants launched the New York Restaurant's Facebook page, which was covered with Mr. Mixon's name and likeness. (¶ 47)  On or around January 25, 2013, after receiving wire transfer instructions from Plaintiffs, the Corporate Defendants transferred $50,000 to Mixon. (¶ 46)  This is the exact amount that was required to be paid pursuant to the 2013 License Agreement. (¶ 40)  Thereafter, there was a pre-opening of the New York Restaurant on May 21, 2013. (¶ 49)  This is substantial partial performance by the Corporate Defendants, all of which is unequivocally referable to the 2013 License Agreement.

Moreover, the Corporate Defendants received a clear benefit from their partial performance. First, they were able to use Mr. Mixon's name and likeness in connection with the launch of the New York Restaurant. (Id.) This itself is sufficient to show they received a benefit. Second, they were able to continue to develop the Pride and Joy brand name, a brand name which prior to the Corporate Defendants association with Mr. Mixon, was worth almost nothing. Third, without the use of Mr. Mixon's name and likeness, PJNY (who only recently received its liquor license from the NYSLA (¶73)), would never have been able to consider opening the New York Restaurant; and it is highly doubtful PJM would be in existence, let alone have recently opened a second *Pride and Joy* Miami location in American Airlines Arena.

As is the case with amendments under NYGOL § 15-301, the same generally holds true for oral and/or unexecuted agreements in general. "[T]he mere fact that the parties contemplate memorializing their agreement in writing in a formal document does not prevent their informal agreement from taking effect prior to that event." See V'Soske v. Barwick, 404 F.2d 495, 499 (2d Cir. 1968).

In determining whether an unexecuted contract is binding, one policy consideration is to ensure that parties are not trapped "in surprise contractual obligations that they never intended." This potential concern is of no issue in the present case. The Corporate Defendants knew that they had no right to use Mixon's name and likeness unless they had an agreement to do so. They negotiated to use his name and likeness in connection with the New York Restaurant, made the first increased payment of $50,000 for that use, and then used his name and likeness. (¶¶ 35, 40, 46, 47)

Moreover, of central importance "is the intent of the parties". See Braun v. CMGI, Inc., 2001 WL 921170, * 7 (S.D.N.Y. 2001) (internal citations omitted). To resolve the intent

11

question, the Court considers the following factors: i) the reservation of a right not to be bound; ii) whether there has been partial performance; iii) whether all of the terms of the contract have been agreed upon; and iv) whether the agreement is usually in writing. Id.

The Corporate Defendants, citing Arcadian Phosphates, Inc. v. Arcadian Corp., 884 F.2d 69, 72 (2d Cir. 1989) and National Gear & Piston Inc. v. Cummins Power Sys., LLC 861 F.Supp.2d 344, 356 (S.D.N.Y. 2012), claim that because the March 2012 License Agreement indicates that any amendment must be in writing, the "court need look no further". The Corporate Defendants are wrong. First of all, "of major significance is whether one party has partially performed, and that performance has been accepted by the party disclaiming the contract." R.G. Group, Inc. v. Horn & Hardart Company, 751 F.2d 69, 75 (2d. Cir. 1984). In the present matter, *both* parties performed under the Agreement, but the Corporate Defendants have not performed *enough*. Mixon lent the use of his name and likeness to the Corporate Defendants in connection with the New York Restaurant.

In addition, contrary to the Corporate Defendant assertions:

"The analysis must not put "disproportionate emphasis . . . on any single act, phrase or other expression, but, instead [should consider] the totality of all of these, given the attendant circumstances, the situation of the parties, and the objectives they were trying to attain." National Gear, 861 F.Supp.2d at 356 (citing Brown Bros. Elec. Contractors v. Beam Constr. Corp., 41 N.Y.2d 397 (1977)).

Where, as here, there has been substantial performance by the Corporate Defendants, and the only way that the Corporate Defendants could have had any right to use Mixon's name and likeness in connection with the New York Restaurant was pursuant to the 2013 License Agreement. It is therefore clear that the 2013 License Agreement is valid and binding. The Corporate Defendants' motion must be denied.

12

II.    PJNY IS A PARTY TO THE 2013 LICENSE AGREEMENT.

The 2013 License Agreement was either a new agreement, or modified the 2012 License Agreement.  In any case, the contracting party was no longer PJM.  Rather, under the 2013 License Agreement, the contracting party was changed to Pride & Joy LLC. (¶ 38)  Pride & Joy LLC, upon information and belief, was never an existing legal entity.  Rather, Pride & Joy LLC and/or simply, *Pride and Joy*, is the assumed business name of both PJM and PJNY. (Id.)  As set forth above, the 2013 License Agreement is valid and binding.  PJNY performed under and pursuant to the 2013 License Agreement (as did PJM).

PJNY was organized shortly after PJM solicited Mixon's involvement in the New York Restaurant. (¶¶ 32, 33)  PJNY leased the New York Restaurant space. (See ¶ 49)  PJNY launched the New York Restaurant Facebook page. (¶ 47)  PJNY applied for, and received, a liquor license from the NYSLA. (¶73)  PJNY held the May 21, 2013 pre-opening of the Restaurant. (¶ 49)   It was a party to the 2013 License Agreement and performed under the 2013 License Agreement. (¶¶ 47-49)  Accordingly, its motion to dismiss plaintiffs' claims against it under the 2013 License Agreement must fail.

III.   PLAINTIFFS HAVE SUFFICIENTLY ALLEGED A CLAIM FOR TRADEMARK INFRINGEMENT AGAINST CARDENAS.

On September 4, 2013, counsel for Cardenas wrote to the Court indicating that it would be seeking to dismiss the claims against Cardenas personally because "Plaintiffs have alleged no grounds to disregard the corporate form . . . ." and cited two cases which stood for the proposition that facts must be sufficiently pled to pierce the corporate veil.  Cardenas' motion now before the Court makes no veil piercing arguments.  Rather, Cardenas has changed his tune and brings the present Motion for reasons other's than those stated in counsel's September 4th pre-motion letter.

13

Cardenas is now moving to dismiss on the ground that although a corporate officer can be held liable for a corporation's trademark infringement, plaintiffs' allegations cannot "plausibly" support a claim that Mr. Cardenas "authorized" or was a "moving, active conscious force behind" PJM and PJNY's infringement.  Cardenas relies on <u>Bambu Sales, Inc. v. Sultana Crackers, Inc.</u>, 683 F.Supp. 899, 913-914 (E.D.N.Y 1988) and <u>Carell v. The Shubert Organization, Inc.</u>, 104 F.Supp.2d 236 (S.D.N.Y. 2000) to support the contention that plaintiffs have failed to satisfy the basic pleading requirements of Rule 8 of the Federal Rules of Civil Procedure.[6]   Cardenas is simply incorrect, and his arguments are premature.

With respect to <u>Bambu</u>, Cardenas' argument is misplaced.  <u>Bambu</u> was decided on a motion for summary judgment, not at the pleading stage.  As for <u>Carell</u>, the Court in <u>Carell</u> held that the plaintiff adequately pled a claim for trademark infringement against one of the business owners because he was alleged to have been "responsible for misattributions of the Makeup Designs and that he participated in trademark infringement for willfully depriving [plaintiff] of authorship credit." <u>Carrel</u>, 104 F.Supp.2d at 271

In the present matter, plaintiffs have made out a clear case of trademark infringement against PJM and PJNY.  Indeed, the defendants, after being given multiple clear last chances to cease the use of Mixon's name and likeness, continued to do so.  The amended complaint alleges that Cardenas is the majority owner and a managing member of both PJM and PJNY. (¶ 16)  The amended complaint further alleges that Cardenas has, at all times, overseen, directed and profited from the infringement alleged by plaintiffs. (¶96).  These allegations are more than sufficient to withstand a motion to dismiss pursuant to Rules 8 and 12(b)(6).  It is difficult to see what could

---

[6]     Rule 8 provides that a pleading must merely set forth "a short and plain statement of . . . the claim showing that the pleader is entitled to relief."  All of plaintiffs' claims in the amended complaint satisfy this requirement.  Indeed, defendants know exactly why they are being sued.    In addition, Cardenas appears to suggest (albeit incorrectly) that the plausibility standard somehow imposes a heightened, Rule 9(b)- like pleading standard.

be more plausible than an allegation that a controlling executive and managing member of a 4-5 person company directed infringing use of Mr. Mixon's name and likeness.  The Corporate Defendants' payments to Mr. Mixon under the 2012 and 2013 License Agreements also were plausibly (and almost certainly) withheld at Defendant Cardenas' direction, and there is little, if any, doubt that discovery will reveal that he directed the unauthorized use of Mixon's intellectual property for the Corporate Defendants' and his own benefit.

The standard of plausibility does not create a probability requirement.  Rather, "it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of Mr. Cardenas' infringing conduct.  See Twombly, 550 U.S. at 545.  And again, whether a claim is plausible is a context specific, common sense driven analysis.  The Court should not be placed in the role of fact finder at the pleading stage of the litigation under the guise of a plausibility determination.

Yet, in any event, it is entirely plausible that Cardenas, the majority owner and a managing member of a five (5) member limited liability company, who is alleged to have directed, overseen and profited from PJNY and PJM's (past and present) trademark infringement, did in fact authorize, and was in fact an active, moving conscious force behind PJNY's and PJM's trademark infringement.  Accordingly, his motion to dismiss must be denied.

<strong><u>CONCLUSION</u></strong>

For the foregoing reasons, plaintiffs respectfully request that the Court deny defendants' motion to dismiss in its entirety.

Dated: November 11, 2013          Respectfully submitted,
      New York, New York

By:  _____
     Stephen Nakamura (SN 4187)
     MERLE, BROWN & NAKAMURA, P.C.

*Attorneys for plaintiffs*
90 Broad Street, Suite 2201
New York, New York 10004
Tel. (212) 471-2990
Fax (212) 471-2997
E-mail: s.nakamura@mbnpc.com

16