UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MYRON MIXON and <br> JACK'S OLD SOUTH, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> PRIDE AND JOY MIAMI, LLC d/b/a PRIDE & JOY, LLC, PRIDE AND JOY BBQ, LLC d/b/a PRIDE & JOY, LLC and PABLO CARDENAS, <br><br> Defendants. | 13 Civ. 5534 (JGK) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

WILMER CUTLER PICKERING
HALE AND DORR LLP

Peter J. Macdonald
Craig R. Heeren
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800
Fax: (212) 230-8888

***Attorneys for Defendants Pride and Joy
Miami, LLC, Pride and Joy BBQ, LLC,
and Pablo Cardenas***

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...............................................................................................1

ARGUMENT ...................................................................................................................................2

I.      The Draft, Unsigned Amendment Cannot Support a Contract Claim ................................2

     A.      Plaintiffs Do Not Dispute That New York Law Requires a Signed, Written Agreement or Amendment Where a Party Requires Such a Document ..................2

     B.      The Stringent Standard for the Partial Performance Exception Is Not Met ............3

II.     PJNY Is Not a Party to Any Contract and Claims Against It Should Be Dismissed ..........8

III.    Mr. Cardenas Is Not Alleged To Have Directed the Alleged Infringement ........................9

CONCLUSION ................................................................................................................................11

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*American Int'l Telephone Inc. v Mony Travel Services, Inc.*,
    No. 99 Civ. 11581, 2001 WL 209918 (S.D.N.Y. Feb. 23, 2001) ............................................. 5

*Amresco Financial I, L.P. v. Stone-Tec, Inc.*,
    No. 98 Civ. 2872, 1998 WL 888987 (S.D.N.Y. Dec. 21, 1998) ............................................. 5

*Anostario v. Vicinanzo*,
    59 N.Y.2d 662 (1983) ............................................................................................................ 7

*Arcadian Phosphates, Inc. v. Arcadian Corp.*,
    884 F.2d 69 (2d Cir. 1989) ................................................................................................ 3, 4

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .............................................................................................................. 9

*Bambu Sales, Inc. v. Sultana Crackers, Inc.*,
    683 F. Supp. 899 (E.D.N.Y. 1988) ................................................................................... 9, 10

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) .............................................................................................................. 1

*Braun v. CMGI, Inc.*
    No. 99 Civ. 12328, 2001 WL 921170 (S.D.N.Y. Aug. 14, 2001),
    *aff'd*, 64 F. App'x 301 (2d Cir. 2003) .................................................................................. 3

*Brown Bros. Electrical Contractors v. Beam Construction Corp.*,
    41 N.Y.2d 397 (1977) ........................................................................................................... 8

*Carell v. Shubert Org., Inc.*,
    104 F. Supp. 2d 236 (S.D.N.Y. 2000) ............................................................................. 9, 10

*Club Haven Inv. Co. v. Capital Co. of Am., LLC*,
    160 F. Supp. 2d 590 (S.D.N.Y. 2001) ................................................................................... 8

*Fisch v. New Heights Academy Charter School*,
    No. 12 Civ. 2033, 2012 WL 4049959 (S.D.N.Y. Sept. 13, 2012) ......................................... 8

*Inter Impex S.A.E. v. Comtrade Corp.*,
    No. 00 Civ. 0133, 2004 WL 2793213 (S.D.N.Y. Dec. 6, 2004) ............................................ 8

*Ixe Banco, S.A. v. MBNA Am. Bank, N.A.*,
    No. 07 Civ. 0432, 2008 WL 650403 (S.D.N.Y. Mar. 7, 2008) ......................................... 3, 4

*Longo v. Shore & Reich, Ltd.*,
  25 F.3d 94 (2d Cir. 1994) ................................................................................................ 2

*Merrill Lynch Interfunding, Inc. v. Argenti*,
  155 F.3d 113 (2d Cir. 1998) ........................................................................................ 6, 7

*National Gear & Piston, Inc. v. Cummins Power Systems, LLC*,
  861 F. Supp. 2d 344 (S.D.N.Y. 2012) .......................................................................... 3, 4

*R.G. Grp., Inc. v. Horn & Hardart Co.*,
  751 F.2d 69 (2d Cir. 1984) ............................................................................................. 4

*Rose v. Spa Realty Associates*,
  42 N.Y.2d 338 (1977) ..................................................................................................... 7

*Rosecliff, Inc. v. C3, Inc.*,
  No. 94 Civ. 9104, 1995 WL 276156 (S.D.N.Y. May 10, 1995) ................................. 3, 6

*Scheck v. Francis*,
  26 N.Y.2d 466 (1970) ..................................................................................................... 2

*Stein v. Gelfand*,
  476 F. Supp. 2d 427 (S.D.N.Y. 2007) ............................................................................ 3

*Tower Charter & Marine Corp. v. Cadillac Insurance Co.*,
  894 F.2d 516 (2d Cir. 1990) ........................................................................................... 1

*V'Soske v. Barwick*,
  404 F.2d 495 (2d Cir. 1968) ........................................................................................... 7

**STATUTES**

N.Y. Gen. Obl. Law § 15-301(1) ............................................................................................ 1, 2

**PRELIMINARY STATEMENT**

While Plaintiffs invoke "partial performance" to animate an unsigned draft "amendment" barred by the 2012 Contract, that narrow exception does not apply where the parties' intent not to be bound is unambiguous, and the allegations do not meet the "unequivocally referable" standard. *See, e.g., Tower Charter & Marine Corp. v. Cadillac Ins. Co.*, 894 F.2d 516, 522 (2d Cir. 1990) ("If the conduct that allegedly constituted partial performance of the oral agreement to modify was in fact compatible with the original agreement, the oral agreement will not be enforced."). Moreover, the policy underlying the avoidance of surprise contractual commitments is particularly apt here; the Plaintiffs' own allegations show that Defendant PJNY was not a party to any agreement, including the allegedly modified 2012 Contract. Asserting an alleged oral modification of a contract (which, by its terms barred oral modification) to create contractual obligations for a second defendant not even a party to that original contract, exceeds well-established principles of New York law. *See, e.g.,* N.Y. Gen. Oblig. Law § 15-301(1) ("A written agreement . . . which contains a provision to the effect that it cannot be changed orally, cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement of the change is sought or by his agent."). Finally, the facts alleged (rather than Plaintiffs' characterizations of them) establish nothing more than Mr. Cardenas' status as a corporate officer and shareholder. The Plaintiffs point to no interaction—whether by email, letter, or in person—with Mr. Cardenas, nor to any sort of personal involvement by him in the alleged infringement. The Amended Complaint itself demonstrates the inadequacy of the Plaintiffs' claims, and labeling the dismissal of improper claims a "pyrrhic victory" (*see* Pls.' Mem. of Law in Opp. to Defs.' Mot. to Dismiss ("Opp.") at 8 n.4) only ignores the relevant legal principle. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557-58 (2007).

# ARGUMENT

I.   **The Draft, Unsigned Amendment Cannot Support a Contract Claim**

   A.   <u>Plaintiffs Do Not Dispute That New York Law Requires a Signed, Written Agreement or Amendment Where a Party Requires Such a Document</u>

Plaintiffs rely heavily on selected email communications between some of the members of PJM (although not the one they seek to hold personally liable) and Mr. Mixon's agent Michael Psaltis. *See* Opp. at 4-6. But stitching a case from those types of interactions only illustrates the purpose underlying New York's well-established legal principle that the parties to an alleged contract will not be bound where they have made it clear that execution of a written agreement is essential. *See, e.g., Scheck v. Francis*, 26 N.Y.2d 466, 469-70 (1970); *Longo v. Shore & Reich, Ltd.*, 25 F.3d 94, 97 (2d Cir. 1994). The same holds true where parties have agreed in an existing contract that any modification or amendment be in writing and signed. *See* N.Y. Gen. Obl. Law § 15-301(1). Plaintiffs acknowledge that the only contract signed by both parties unambiguously stated that it could not be amended without the signed and written consent of both parties. *See* Am. Compl., Ex. A § 13; Mem. of Law in Supp. of Defs.' Mot. to Dismiss ("Mem.") at 2. Putting aside their conclusory characterizations (which are of no legal moment), the Plaintiffs allege only that the parties negotiated an amendment, with Mixon's agent proposing language that likewise contemplated the parties' signatures, and which was never signed. *See* Am. Compl. ¶¶ 36, 38-46, Ex. B at 53; Mem. at 4. Those negotiations themselves reflected several communications to Mixon's agent that PJM's managing members, including Mr. Cardenas, the alleged "controlling managing members" (Am. Compl. ¶ 32), did not all agree to the amendment. *See id.* ¶¶ 43-45. Put simply, the Plaintiffs' Opposition only confirms that PJM communicated that it would not modify the 2012 Contract without a signed and written agreement.

   That the parties may have continued to have business dealings regarding the subject

matter of their negotiations, and continued to do business under the 2012 Contract, does not override the basic principle of New York law that the parties' reliance on a writing in order to be bound will be paramount. Where the need for a signed and written agreement or amendment is as clear as it is here, a breach of an oral contract claim should be dismissed. *See, e.g., Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 861 F. Supp. 2d 344, 356-57 (S.D.N.Y. 2012) (dismissing contract claim where the alleged agreement "remains unsigned"); *Ixe Banco, S.A. v. MBNA Am. Bank, N.A.*, No. 07 Civ. 0432, 2008 WL 650403, at *8-9 (S.D.N.Y. Mar. 7, 2008) (dismissing contract claim based on oral modification where original agreement stated it could not be "waived, altered, amended[,] supplemented or modified except by written instrument"); *Rosecliff, Inc. v. C3, Inc.*, No. 94 Civ. 9104, 1995 WL 276156, at *5 (S.D.N.Y. May 10, 1995) (dismissing contract claim based on unsigned draft agreement).

B.  The Stringent Standard for the Partial Performance Exception Is Not Met

Plaintiffs' reliance on alleged partial performance (*see* Opp. at 8) fails as a matter of law. Where the parties' intent to be bound only by a signed writing is clear, dismissal is proper without reference to a claim of partial performance. *See Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 72 (2d Cir. 1989); *Nat'l Gear*, 861 F. Supp. 2d at 356 (collecting cases). As both the 2012 Contract and Plaintiffs' own conduct demonstrate, PJM's intent to be bound by only a signed amendment was objectively clear, and therefore "the Court need look no further." *Id.*; *see also Braun v. CMGI, Inc.* No. 99 Civ. 12328, 2001 WL 921170, at *7 (S.D.N.Y. Aug. 14, 2001) ("The most important factor to consider is whether the parties expressly reserved their contractual obligations until the execution of a writing."), *aff'd*, 64 F. App'x 301 (2d Cir. 2003).[1]

---

[1] Even if the Court were to look further, an agreement to grant an equity stake in restaurants and alter the terms of a partnership agreement (*see* Am. Compl. Ex. B at 53) is the type ordinarily committed to writing. *See Stein v. Gelfand*, 476 F. Supp. 2d 427, 432 (S.D.N.Y. 2007) (Continued . . .)

- 3 -

In *Arcadian*, the Court stated that it "need look no further than the first factor," the language of the agreement, even though there was "considerable partial performance," because the parties made clear that they did not intend to be bound until a future agreement was completed. *See* 884 F. 2d 69 at 72-73. Similarly, in *National Gear*, the parties to an authorized dealer relationship drafted but never signed a distribution agreement that stated that it was effective "upon the date fully executed." 861 F. Supp. 2d at 350. Despite alleged partial performance of *over three years*, the Court dismissed the claim. The Court noted that normally a court should consider the "totality" of factors related to whether there was a contract, but "if the language of the agreement is clear that the parties did not intend to be bound, the Court need look no further." *Id.* at 356 (citation omitted). And although the Court considered the alleged partial performance, it concluded there was no contractual agreement because "the language of the Agreement makes clear that Defendants did not intend to be bound until the Agreement was executed . . ." *Id.* at 358-59. Plaintiffs do not address or distinguish the facts of either case, and the language here is even more clear than those in *Arcadian* and *National Gear*.

Even if consideration of partial performance were appropriate, the facts alleged do not fit within this narrow exception to the general rule. Partial performance is "not dispositive, and in some cases it is given little weight." *Nat'l Gear*, 861 F. Supp. 2d at 357-58. The standard is "stringent," and a party cannot satisfy it unless the conduct is "*unequivocally referable* to the oral modification." *L & B 57th Street, Inc. v. E.M. Blanchard, Inc.*, 143 F.3d 88, 93 (2d Cir. 1998) (emphasis added). Plaintiffs bear the burden of alleging facts to support this standard, and have failed to do so. *See Ixe Banco*, 2008 WL 650403, at *9 ("[t]he party claiming the modification

---

(agreement to join existing LLC is "usually . . . committed to writing" even where "parties have been friends for over 30 years"); *see also R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) ("writing requirement would be expected" for restaurant franchise agreement).

*must show*" both the alleged conduct "is incompatible with the terms of the agreement as written" and is "unequivocally referable to the oral modification itself") (emphasis added).

The alleged payment by PJM to Mixon (*see* Opp. at 10) is consistent and compatible with payment of Mixon's "guaranteed salary" under the 2012 Contract. *See* Am. Compl. ¶ 23, Ex. A § 3. Plaintiffs claim that Mixon was owed $37,500 under the 2012 Contract by the time he received the $50,000 payment (*id.* ¶¶ 34, 46), and would soon be owed another $18,750 by its terms (*id.* ¶ 23, Ex. A § 3). Whether the parties entered into a new agreement or continued under the 2012 Contract, PJM would owe Mixon at least $50,000. Plaintiffs, by their own pleadings in this case, have acknowledged this; they concede that PJM can be obligated to pay no more than $25,000 of the allegedly $75,000 in missed salary payments under the 2012 Contract because Mixon has previously been paid $50,000. *See id.* ¶ 60. Their position—that Mixon is entitled to the $50,000 *either* under the 2012 Contract *or* the alleged amendment—is inconsistent with the narrow "unequivocally referable" standard. *See American Int'l Tel. Inc. v Mony Travel Servs., Inc.*, No. 99 Civ. 11581, 2001 WL 209918, at *4 (S.D.N.Y. Feb. 23, 2001) (payment consistent with alleged modification and less than amount owed pursuant to original written agreement insufficient to support partial performance exception because "[defendant] was already required to [pay money] under the original agreements"). Here, Mixon himself contends (and the 2012 Contract provides) that he was entitled to be paid the $50,000 he received, and the fact that, at the time Mixon received the $50,000, a portion of that ($37,500) was overdue, and a portion ($18,750) would not be due for another five weeks, is of no legal significance. *See Amresco Fin. I, L.P. v. Stone-Tec, Inc.*, No. 98 Civ. 2872, 1998 WL 888987, at *3 (S.D.N.Y. Dec. 21, 1998) (where payment was required by the original agreement, "[t]he fact that the amount of the payments . . . coincide with the amounts required to be paid pursuant to the alleged oral

agreement is of no legal import" because "[d]efendants could have been making partial payments" of the amount owed).  The payment is of even less legal significance here, because it was made *to Mixon*, the party claiming the existence of the exceptional modification, and conferred no benefit on PJM.  *Merrill Lynch Interfunding, Inc. v. Argenti,* 155 F.3d 113, 122 (2d Cir. 1998) ("an action does not amount to partial performance . . . where that action confers no benefit on the party against whom enforcement is sought").

The alleged use of Plaintiffs' trademarks fares no better.  Mixon granted PJM the use of the trademarks in the 2012 Contract, and that contract also contemplated the possibility of opening of restaurants other than the one in Miami.  *See* Am. Compl. ¶¶ 22-23, Ex. A §§ 4-5.  The few preliminary activities alleged—the launch of a Facebook page and a pre-opening event—is insufficient to support an oral modification.  *Rosecliff*, 1995 WL 276156 at *5 (dismissing claim and holding "[w]hat Plaintiffs characterize as partial performance" constituted "mere preparation").  Nothing more is alleged in the Amended Complaint than limited preparatory activities that are both compatible with the 2012 Contract, and amount to no more than the type of preliminary commercial activities parties might take in anticipation of a completed negotiation of a contract.  But neither scenario constitutes the partial performance "unequivocally referable" to an alleged oral agreement necessary to depart from New York's strong policy to uphold agreements requiring written and signed modification of contract.  The Plaintiffs posit a commercial world where, despite agreeing in writing to multiple provisions that no new contract can come into existence unless and until both parties agree upon and sign a writing, the most preliminary type of preparatory work, undertaken by any agent of a corporate entity, while negotiations are on-going, triggers a new contract.  That fails to conform to New York law and makes no commercial sense.

The situation alleged by Plaintiffs, where some representatives of parties to an agreement continue to work together as they negotiate a potential amendment to expand the scope of the relationship, is hardly unusual. The allegations advanced by the Plaintiffs in this case illustrate the purpose underlying New York's bright line approach to when a contract comes into existence. That principle provides commercial clarity where parties may have worked together while they negotiated, but ultimately failed to reach a new agreement. The cases cited by Plaintiffs only support this point. In *Merrill* (*see* Opp. at 10), the Court *upheld* a judgment dismissing a contract claim based on an alleged oral modification to a written agreement. *See* 155 F.3d at 122-23. The Court concluded that the performance was not unequivocally referable to the alleged oral agreement because it could be "reasonably explained by the possibility of other reasons for the conduct" such as "preparatory steps taken with a view toward consummation of an agreement in the future." *Id.* Similarly, in *Anostario v. Vicinanzo*, cited by Plaintiffs to claim that the unsigned modification was "valid and binding" (*see* Opp. at 10), the New York Court of Appeals ordered *dismissal* of a contract claim that alleged partial performance because the conduct was equally explainable as preliminary conduct prior to a fully-negotiated agreement. 59 N.Y.2d 662, 664 (1983). Although the alleged oral agreement might have provided "significance to the plaintiff's actions," the conduct was not "unintelligible or at least extraordinary" on its own and "explainable only with reference to the oral agreement." *Id.* (internal quotations and citations omitted).[2]

---

[2] The remaining cases cited are distinguishable or support Defendants' motion. *See V'Soske v. Barwick*, 404 F.2d 495, 499 (2d Cir. 1968) (stating that "if the parties intend not to be bound until they have executed a formal document embodying their agreement, they will not be bound until then," but finding no such intent); *Rose v. Spa Realty Assocs.*, 42 N.Y.2d 338, 344-45 (1977) (concluding that "the conduct of the parties evidence[d] an *indisputable mutual departure* from the written agreement," performance was nearly complete and cost hundreds of thousands (Continued . . .)

### II. PJNY Is Not a Party to Any Contract and Claims Against It Should Be Dismissed

Even if the 2013 Documents could form the basis of a breach of contract claim against PJM, any claim against PJNY should be dismissed. *See Fisch v. New Heights Acad. Charter Sch.*, No. 12 Civ. 2033, 2012 WL 4049959, at *7 (S.D.N.Y. Sept. 13, 2012) (dismissing claim where it was "undisputed that [defendants] did not enter into a contract with [plaintiff] in their individual capacities"); *Inter Impex S.A.E. v. Comtrade Corp.*, No. 00 Civ. 0133, 2004 WL 2793213, at *2 (S.D.N.Y. Dec. 6, 2004) (dismissing claim based on alleged third-party assignment because plaintiff "failed to allege that defendant . . . was a party to that Agreement"). Plaintiffs do not meaningfully respond or cite case law to explain how a party not named in *any* alleged agreement should be held liable for breach of contract. *See* Opp. at 13.

Instead, Plaintiffs reiterate that "under the 2013 License Agreement, the contracting party was changed to Pride & Joy LLC," an "assumed business name of both PJM and PJNY," and PJNY "was a party to the 2013 License Agreement and performed" under that agreement. *Id.* These allegations amount to a bare assertion that PJNY must be deemed a party because Plaintiffs say so, and don't even map to any relevant legal concept. Moreover, the allegation that "Pride & Joy LLC" was a pseudonym for *both* PJM and PJNY makes no sense and is completely unsupported—how can a name in a draft amendment that contemplates a signature by one party mysteriously refer to another (unnamed) party at the same time? *Iqbal* more than establishes the principle that courts are no longer compelled to accept implausible claims (let alone preposterous ones) in the face of a motion to dismiss. And even if Plaintiffs' construct were credited, it is irrelevant. The unsigned draft by Mixon's agent states that it is an amendment to an agreement

---

of dollars, and "was not compatible with *any option* in the written agreement") (emphasis added); *Brown Bros. Elec. Contrs. v. Beam Constr. Corp.*, 41 N.Y.2d 397, 399 (1977) (finding a purely oral agreement binding); *Club Haven Inv. Co. v. Capital Co. of Am., LLC*, 160 F. Supp. 2d 590, 593 (S.D.N.Y. 2001) (concluding that the alleged partial performance was *not sufficient*).

"between Myron Mixon . . . and Pride and Joy Miami LLC" and that "the parties [Mixon and PJM] hereby agree that the [2012 Contract] shall be supplemented and amended by this amendment . . . [.]"  The document sought to amend the 2012 Contract by replacing Mixon's name with "Jack's Old South, LLC" and PJM's with "Pride & Joy LLC," but those were *terms* of the (incomplete) amendment to an existing agreement between PJM and Mixon.  That the amendment was to be signed only by Mixon and PJM, and did not contemplate signature by PJNY or "Pride & Joy LLC" confirms the point.  See Am. Compl. Ex. B at 53.  Plaintiffs cite no law and provide no basis for the extraordinary proposition that an entity *not* a party to any prior agreement, can become liable under an unsigned amendment to which it also is not a signatory, and which does not even mention the entity.  That is the antithesis of commercial clarity.

**III.   Mr. Cardenas Is Not Alleged To Have Directed the Alleged Infringement**

Plaintiff also identifies no basis upon which Mr. Cardenas, as a corporate officer, could be found to be the "moving, active conscious force" behind the infringement, the predicate for individual liability.  See *Carell v. Shubert Org., Inc.,* 104 F. Supp. 2d 236, 271 (S.D.N.Y. 2000); *Bambu Sales, Inc. v. Sultana Crackers, Inc.*, 683 F. Supp. 899, 913-14 (E.D.N.Y. 1988).[3]  The only factual allegations regarding Mr. Cardenas, as Plaintiffs admit, is that he is a member and owner of PJM and PJNY.  See Opp. at 14.  Plaintiffs also allege that Mr. Cardenas "over[saw], directed and profited from the infringement," (*id.*) but that is a conclusory legal assertion unsupported by any underlying facts.  See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient).

---

[3] Contrary to Plaintiffs' claim that Mr. Cardenas "changed his tune" regarding dismissal, Defendants argued there were "no grounds to disregard the corporate form *or otherwise extend liability*[.]"  Letter to Court from Mr. Macdonald, Sept. 4, 2013 [Dkt. 7] (emphasis added).

Plaintiffs ask "what could be more plausible than an allegation that a controlling executive and managing member of a 4-5 person company directed infringing use."[4]  Opp. at 14-15.  The case law provides an answer.  In *Carell*, the plaintiff adequately pled a claim against one defendant because she alleged that he "licensed many of the infringing uses," "participated in the infringements," was "responsible for misattributions," and "willfully depriv[ed] her of authorship credit" for the trademarked items. 104 F. Supp. 2d at 271.  Claims were dismissed against defendants where the plaintiff alleged that one was a "Chairman" of an organization and another a "sole or part owner" of another corporate entity.  *Id*.  Similarly, in *Bambu*, plaintiff's claims were viable where it was shown that individual defendants "purchased the counterfeit [product]" and "resold it," "specifically instructed his buyer concerning the purchase and subsequent resale of the infringing merchandise, approved these transactions and personally examined the goods," and "arranged for the purchase and resale of the counterfeit paper" and "personally received the merchandise," but were dismissed against an individual where "the evidence suggests that he had no involvement at all in any wrongful act."  683 F. Supp. at 914.

Unlike the claims that survived in in *Bambu* and *Carell*, Plaintiffs do not allege any facts to show "moving," "active," or "conscious" conduct by Mr. Cardenas that could support direct liability for any alleged infringement.  Plaintiffs may believe that "discovery will reveal that [Mr. Cardenas] directed the unauthorized use of Mixon's intellectual property" (Opp. at 15), but the Amended Complaint does not allege any facts to render such a theory anything more than speculation.

---

[4] Plaintiffs' claim of "a 4-5 person company" is not alleged in the complaint and incorrect based on the allegations that there are at least five members of PJM and PJNY, to say nothing of the staff needed to operate one restaurant and begin plans to open others.  *See* Am. Compl. ¶¶ 30, 44

## CONCLUSION

For the foregoing reasons, Defendants respectfully requests that the Court (i) dismiss all contract claims based on the 2013 Documents; (ii) dismiss all contract claims against PJNY; and (iii) dismiss the infringement claims asserted against Mr. Cardenas.[5]

Dated: New York, New York
November 20, 2013

Respectfully submitted,

**WILMER CUTLER PICKERING
HALE AND DORR LLP**

By: /s/ Peter J. Macdonald
Peter J. Macdonald
Craig R. Heeren
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel.: (212) 230-8800
Fax: (212) 230-8888

*__Attorneys for Defendants Pride and Joy Miami, LLC, Pride and Joy BBQ, LLC, and Pablo Cardenas__*

---

[5] Plaintiffs do not respond to Defendants' argument that the cause of action for "misappropriation of name and likeness" should be dismissed because no such common law claim exists in New York (s*ee* Mem. at 15 n.6), and appear to abandon the claim entirely, stating that they seek damages for "a) breach of contract; b) repudiation; and c) trademark infringement" (Opp. at 2 n.1). Accordingly, that claim should be dismissed.